## MOSELY *et al. vs.* FLOYD *et al.*

1. The payment of money by one executor into the hands of a co-executor on notes given by himself to the other for the purchase of property belonging to the estate sold by the co-executor, is not such an act, of itself, as will charge such executor with the subsequent waste or misapplication of the funds of the estate by the other executor.

2. When two are liable, and the creditor takes the note of one, extending the time of payment, the other is thereby discharged from further liability.

3. That a note was given as a payment, and not as a mere memorandum, may properly be inferred from a receipt given therefor, in which the note is treated the same as money paid at the same time, and from the fact that two and a half years elapsed before any attempt is made to treat it other than as a payment.

In Equity, in Morgan Superior Court. Tried before his Honor Judge HARRIS, at the September Term, 1860.

On the 5th day of September, 1853, Albert O. Mosely, his

PAYMENT. "Where a bank held demands, secured by collaterals, against its customers for loans and advances, part of which demands had been liquidated by note, and there had been a course of dealing between the parties, embracing these advances, and also deposits made with the bank from time to time by the customer, and where there was evidence tending to show an accounting between the parties, and an accord and settlement, in which the collaterals securities were divided between them, the amount of collaterals falling to the bank credited on the gross sum of its demands, a new note taken for the bal-

Mosely et al. vs. Floyd et al.

wife, Mary Jane Mosely, and Ann Eliza Mosely, filed their bill in equity, in Morgan Superior Court, against John J. Floyd and others, in which, among other things, they alleged:

That in the year 1838, John Floyd, then of said county of Morgan, departed this life, leaving unrevoked and in full force, a will, in which Stewart Floyd, and the said John J. Floyd, were nominated executors; that the will was duly proven and recorded, and the said executors were regularly qualified as such; that the *fourth* item of said will is as follows, to wit: "It is my desire that all of the balance of my property of which I am possessed, or of which I may die possessed, both real and personal, be sold; out of which, I first desire that all my just debts be paid, and out of the money remaining after the payment of my debts, I give to my sons, Stewart and John J. Floyd, the sum of five thousand dollars to be held by them, or kept out in safe hands at interest, and it is my will and desire that the interest accruing annually from said sum of money be annually paid over to my beloved wife, Mina, by my said sons, for her comfort, support and maintenance, during her natural life or widowhood, and at her death, or marriage, it is my will and desire, that said sum of five thousand dollars be divided among my children, in the following manner: Mary Alford, Stewart Floyd, Martha Reese and John J. Floyd each one share, etc., etc."; that the same item gave four other shares of said five thousand dollars, after the death or marriage of said Mina, to four other children in trust estates; that by a codicil to said will, the testator, after reciting that the said Martha Reese, wife of Thaddeus B. Reese, had died subsequent to the making of said will, bequeathed unto the complainants, Ann Eliza and Mary Jane, daughters of the said Martha Reese, one share of his estate between them, to be held in trust for them by the said Stewart and John J. Floyd, until the said Ann Eliza and Mary Jane married, or attained the age of twenty-one years, and then to be paid them, with interest; that said bequest in favor of the said Mina depended on the condition, that she did not elect to take her dower; that it was the testator's intention that the complainant's, Ann Eliza and Mary Jane, should have and enjoy a full share of his estate, in the place of the said Martha Reese, their mother, and the said Mina Floyd having failed to elect to take her dower in the lands of the testator, the female complainants have a vested

ance, and the old notes all canceled and surrendered and entered paid on the discount book of the bank: Held, a. That this **transaction on its face would operate as a payment and cancellation** of the demands held by the bank against the customer except as to said balance, for which the new note was taken." Rice *v.* Georgia National Bank, 64 Ga. 173-4, 178.

"**Where a partnership,** composed of two persons, **was indebted up-**

remainder in one-eighth part of said five thousand dollars, with interest thereon from the year 1838; that the complainants have never had a final settlement with the said executors; that the complainant, Ann Eliza, having previously intermarried with one William Johnston, Jr., her husband received from said executors eight hundred and three dollars and eighteen cents on the 21st of January, 1845, and the complainant, Mary Jane, having attained the age of twenty-one years, received from said executors some seven hundred dollars on the 15th of November, 1850; that there is still due the complainants, from said executors, six thousand dollars, or other large sum; that the said Stewart Floyd, one of said executors, departed this life in August, 1853, intestate, without having come to a final settlement with the complainants on account of their interest and share in the estate of the said John Floyd; that said Stewart died utterly and hopelessly insolvent; that his property, chiefly personal, was, at the time of his death, encumbered with mortgages, judgments, and other liens; that said property, or the great bulk of it, is now levied on and advertised for sale under various writs of *fieri facias* in favor of sundry plaintiffs, to wit: Benjamin M. Peeples, Albert G. Foster, and others; that said Stewart Floyd having died without accounting to the complainants for their share of the estate of which he was the representative, they have a right to be paid out of the estate of the said Stewart Floyd before the claims of said execution creditors or any other person whatever; that the complainants have reason to believe that the executors aforesaid have not raised said sum of five thousand dollars, although the property directed to be sold was ample for that purpose, after paying all the testator's debts, and that if the executors did raise the sum, they have not set it apart for the purpose directed, or put it at interest in safe hands, but have used it for their own purposes; that complainants apprehend that their remainder interest in said sum of five thousand dollars will not be forthcoming at the termination of the life-estate of the said Mina Floyd, unless the chancellor will interpose in their behalf, especially as they are uncertain how far the said John J. Floyd, surviving executor, participated in the management, and as they believe and charge that the said Stewart was engaged in the management and control of all the business connected with said estate; that there is not, and will not likely

on an open account, and on the day the partnership was dissolved one of the partners, with the knowledge and consent of the other, mailed his individual promissory note to the creditor for the purpose of settling the account, this of itself was not a payment of the account, unless the note was accepted as such by the creditor." Norton *v.* Paragon Oil Co., 98 Ga. 468 (1), 471. Civil Code, §3720.

be, any administration on the estate of the said Stewart Floyd, as he died utterly insolvent; that as they are otherwise remediless, the complainants pray, by their bill—1st, That the parties defendant may fully answer the charges of the bill; 2d, That said execution creditors may be enjoined from selling the property levied on until the complainant's case is heard; 3d, That a receiver be appointed to take charge of the property of the said Stewart Floyd, and hold the same for the benefit of all the parties interested; and 4th, That the complainants have such other relief as their case entitles them to.

JOHN J. FLOYD filed his answer to the bill, in which he makes the following statements, to wit: He admits the death of testator, the probate of the will and codicil, and the qualification of Stewart Floyd and himself as executors, as charged in the bill; he also admits the provisions of the will as quoted in the bill; that Stewart Floyd, one of the executors, took charge of the property and had the same appraised and an inventory and appraisement thereof returned to the proper Court, but denies that he, as executor, ever took the charge or possession of any portion of the property of the said estate, either real or personal; that then, as now, he resided in the county of Newton, and he and all the legatees and creditors of said estate having entire confidence in the said Stewart Floyd, suffered him to manage and control the property of said estate, just as if he were the sole executor of the testator's will; that he has no reason to doubt the correctness of the exhibits to the bill of complainants; he admits that the fourth item of his father's will is as the complainants have quoted it; he also admits that the second item of the codicil is correctly quoted, and that it was the testator's desire that said female complainants should have one share of his estate between them, to be held in trust for them by his sons, Stewart and the defendant, until they married or attained the age of twenty-one years, and then to be paid to them, with interest—that is, one equal share, when added to what he had given to their mother, Martha Reese, and to them before that time; that whilst he will not undertake to say, with absolute certainty, what was the intention of the testator, in the premises, he will say that he does not believe that the said testator, by the second item in the codicil to his will, or any other part of said codicil, ever intended to convey to the said

Ann Eliza and Mary Jane, any interest whatever in the remainder of the said five thousand dollars, after the marriage or death of the said Mina Floyd, for the reason, among others, that at the time of the execution of said will and codicil, he had two grandchildren, the offspring of a deceased daughter, one of whom lived with him as one of his family, and for whom he had as strong natural affection as he had for said female complainants; and yet, whilst he bequeathed to his immediate offspring an interest in remainder, in said five thousand dollars, he did not convey to his said grandchildren (the children of Ann Swift, deceased), any such interest in said five thousand dollars—that if he intended by his will and the codicil thereto, to give the said female complainants an interest in the said five thousand dollars, and not to give the same interest to the Swift children standing in exactly the same relation to him, it would have been a discrimination against the latter for which no reason existed, and which he does not think the testator would have done. Again: the codicil directs that one share, that is, one equal share of the testator's estate, when added to what had been given to their mother, and to them before that time, should be held by the executors for the said female complainants, and to be paid to them with interest, when they married or attained the age of twenty-one years, and the defendant can not believe that the testator intended that the executors should pay to the said Mina Floyd the interest annually accruing on the said five thousand dollars, and also pay to said female complainants interest for the same time, on one-eighth of the same money—moreover, the share of the said female complainants was directed to be paid to them, with interest, so soon as they, or either of them should marry, or attain full age, and if made to apply or extend to an interest in said five thousand dollars, would, to the extent of that interest, defeat the provision made by the testator for his wife, the said Mina Floyd, and the defendant does not believe that such was the wish or intention of said testator; that the said Mina is still living and unmarried; that whatever may be the rights of female complainants, under a proper construction of the said will and codicil, the defendant submits to the Court; that he admits the marriage of Albert O. Mosely and the said Mary Jane, but can not say as to the exact time of the marriage —that the said Mary Jane was twenty-one years old before

the marriage—that the said Mina did not elect to take dower —that he admits that the portions of the female complainants in the estate of testator was payable immediately on their marriage or majority with interest from the time the residuum of said estate commenced to bear interest in the hands of the said Stewart Floyd, which defendant believes was the 25th of December, 1839—that said female complainants never did have any settlement with the defendant on account of their interest in the said testator's estate, nor does he know whether any final settlement as to such interest ever took place between them and the said Stewart Floyd and William Johnston in right of his wife Ann Eliza Johnston, and between the said Stewart and the said Mary Jane, intended by the parties to be final, and was in fact final—that in pursuance of such settlement the said Stewart Floyd on the 21st day of January, 1845, paid to the said William Johnston all that was due him in right of his wife, the said Ann Eliza, from the said estate under the said will and codicil, and that in consummation of such settlement the said William Johnston delivered to the said Stewart Floyd his receipt, of which the following is a copy, to wit:

"$803.18." "Received of Stewart Floyd and John J. Floyd, executors of John Floyd, deceased, eight hundred and three dollars and eighteen cents, it being the amount due by them on the first day of January, instant, of principal and interest coming from the estate of said deceased to Ann Eliza Johnston, formerly Ann Eliza Reese, who is entitled to one-half share as legatee of said estate."

"January 21st, 1845."          "WM. JOHNSTON, JR."

The defendant further states that a settlement also occurred between the said Stewart Floyd and the said Mary Jane, after she became of age, in which settlement she was aided by her father, Thaddeus B. Reese—that pursuant to such settlement and in consummation of the same, the said Stewart Floyd paid to her the full amount to which she was entitled under the said will and codicil of the testator aforesaid, and received from her a receipt, of which the following is a copy, to wit:

"Received of the executors of John Floyd, deceased, twelve hundred dollars under the will of the said John Floyd.

"MARY JANE REESE.

"15th November, 1850."

The defendant pleads these settlements in bar of any other or further recovery in behalf of said complainants against this defendant—defendant admits that the said Stewart Floyd died insolvent in August, 1853, as stated in the bill—that he left considerable property which is encumbered as charged, and that the same was levied on, and since the filing of the bill the same has been sold, and the proceeds of the sale distributed by order of Morgan Superior Court at the March Term, 1854, and the defendant refers to the return of the sheriff, the *fi. fas.* and order of distribution, all of which are of file in said Court—that after exhausting all the property of the estate of the said Stewart Floyd, the defendant will be still a large loser by him—that so far as the defendant knows, all the property of said testator was sold by the said Stewart Floyd, which the said will directed to be sold, and that the said Stewart considered the said five thousand dollars in his hands for the benefit of the said Mina Floyd—that the said John Floyd died in July, 1838, and the property was sold mostly in January, 1839, and since that time and up to some short time before his death the said Stewart Floyd had made payments to the said Mina Floyd of the interest accruing on the said sum of five thousand dollars in whole or in part, and the defendant repeats his positive denial, that the said sum, or any part of it, or any part of the interest thereon, ever came into his hands or was converted by him—the defendant admits that most of the lands belonging to testator's estate were purchased by the said Stewart Floyd for himself and the defendant, and the defendant and said Stewart also purchased some of the negroes, the defendant buying at the sale Isaac, Willey, and Tom, an old man now dead.

In March, 1855, the complainants amended their bill by alleging: That the settlements set up in the defendant's answer were in fact no settlement, and that they proceeded upon a false basis—that if any accounting was had at all it was to Thaddeus Reese, the father of the complainant, Mary Jane Mosely, and to the husband of the said Ann Eliza Johnston, neither of whom were aware of the rights of the said female complainants—that said pretended settlements were made without a due examination into the said accounts and returns of the said Stewart Floyd which returns show a large balance still due to said complainants—that there was a gross mistake

made in said settlements by a failure to include in the charges notes of said Stewart against the said Stewart Floyd and J. Floyd, and one Francis Johnston now mentioned in the list of insolvent notes due to the testator's estate which complainants insist are justly chargeable against said executors, and which amounted to over six thousand dollars on the 25th of December, 1839—that in the settlement with the said Mary Jane the said Stewart Floyd only paid her seven hundred dollars in money, and gave his note for the balance of five hundred dollars, not as a payment, but as a mere memorandum of the balance which he admitted was due to her—that at that time, the said Stewart was largely embarrassed, and on the verge of hopeless insolvency, of which the said Mary Jane was not aware at the time of the pretended settlement, and insists that said note, under the circumstances, was not a payment, and did not release the said Stewart from his liability to the said Mary Jane, as executor and trustee, or impair her right to charge the estate in his hands for the amount of said note—that she is willing and hereby offers to turn over, and deliver to the administrator of the said Stewart Floyd the said note, copy of which is as follows, to wit:

"By the 1st January next, I promise to pay Mary Jane Reese five hundred dollars for value received.

"1st Nov., 1850.                                     S. FLOYD."

The complainants further allege that said note was given as a memorandum only, and because the said Stewart Floyd was unable to pay the money—that the said John J. Floyd well knew that said sum of five thousand dollars had not been raised and loaned out by said Stewart as directed by said will, and that he was consenting to a breach of trust and consented thereto long after the said Stewart Floyd became embarrassed, and was knowing and consenting to the conversion of said five thousand dollars by the said Stewart Floyd to his own use—and that he was also knowing and consenting to his own use and the use of the said Stewart, of the amount of said notes so neglected to be paid, and returned by themselves as received for the estate of the said testator.

This amendment to the bill was answered by John J. Floyd, as follows: That his brother, Stewart Floyd, informed him— and he believed it to be true—that Earnest L. Wittich, Esq., then the clerk of the Court of Ordinary of said county of Morgan, made out for him a balance sheet of the estate of

the said testator, counting the interest up to the first day of January, 1845; that he now has the balance sheet so made out by Mr. Wittich, and, after a careful examination of the same, he is unable to discover any mistake in it, and he appends it to his answer by way of exhibit; that the said Stewart Floyd, as defendant is informed, and believes, settled with the said William Johnston, according to the said statement and balance sheet, and paid him the amount specified in his receipt exhibited in his former answer; that the said Mary Jane was entitled at that time to the same, as her sister, the said Ann Eliza Johnston, which she afterwards received with the interest on the same, from the settlement with Johnston, to the settlement with her; that he believed the father of the said Mary Jane was present at the settlement with her, because the body of the receipt which she gave, is in his handwriting, whilst the signature is in her own; that he does not know how thoroughly the said Thaddeus B. Reese examined the account and returns of the said Stewart Floyd, at the time of the settlement, but he verily believes that the said Reese understood the basis of the settlement, for this defendant does know that he usually looked closely to any interest he, or his children, had in the estate of their maternal grandfather, and has no doubt but what said Reese thought, and was well satisfied, that the settlement exhibited the true amount due to the said Mary Jane; this defendant not knowing the facts, has heard, that seven hundred dollars only was paid to the said Mary Jane, and that a note was given by the said Stewart Floyd for five hundred, but this defendant does not believe that said note was given as a mere memorandum, but was accepted and receipted for by the said Mary Jane as cash, or in lieu of cash, and that it was deemed an evidence of indebtedness from the said Stewart Floyd to the said Mary Jane; the defendant can not say how far the said Mary Jane was familiar with the pecuniary condition of the said Stewart Floyd at the time of said settlement, but verily believes that her father was thus familiar, because he lived in the same town with him at the time, and had so lived for many years; and whilst the defendant admits that when said note for five hundred dollars was given, the said Stewart was in debt he does not believe that he was insolvent, but believes he was then able to pay all his just debts; the defendant denies that he knew

of, or consented to, any neglect or failure to raise said sum of five thousand dollars, as directed by said will, but believes that the said Stewart Floyd did raise it as directed; the defendant also denies, that he knew of, or consented to, any breach of trust, on the part of the said Stewart, in relation to said five thousand dollars, or that he knew of any neglect or failure to pay, or collect, any notes due to the estate of said testator on the part of the said Stewart Floyd, as this defendant had nothing to do with the management of said estate, the defendant has long since paid off, and fully discharged all his indebtedness by note or otherwise to said estate, not dreaming but that it was safe and proper for him to do so; that he had no doubt, but what the said Stewart was fully able to pay all his debts and liabilities until a short time before his death; that on the sick-bed from which he never arose the said Stewart informed him that he had used the said sum of five thousand dollars, and was not able to replace it; that this announcement not only astonished the defendant, but came too late for him to remedy the difficulty, but the defendant believes that, in the settlements aforesaid with the said Mary Jane and the said William Johnston, the said Stewart Floyd included, and accounted for, all his liabilities to them, and to the said estate of said testator, and again pleads said settlements in bar of a recovery by complainant. The defendant repeats, that although he qualified as executor of the testator's will, he did not take possession or control of any portion of the estate; that he was not cognizant of, or consenting to, any waste of the assets of said estate by the said Stewart Floyd; on the contrary, the defendant, and all the legatees, had entire confidence in the fact that the said Stewart would wind up said estate according to law and the will of the testator; that the said Stewart owned and held a large property in land and negroes in the vicinity of most of the legatees, and especially of the complainants, which was of an aggregate value equal to, if not greater, than the estate of which he had the management; that from the time of the testator's death, up to the marriage of said female complainant, the defendant lived in Newton county, and knew little or nothing of the management of the testator's estate, and believed that the complainants had been fully settled with; that some time after the testator's death, defendant was informed that it was the wish of the said Mina

Floyd, that the sole management of the five thousand dollars set apart for her support and maintenance, should be confided to the said Stewart, as he lived near her, and would be more convenient to transact her business with him, than with him and defendant jointly, and in furtherance of this wish of the said Mina, the said Stewart on the 1st day of January, 1840, gave to this defendant a receipt, of which the following is a copy:

"Received of the executors of John Floyd, deceased, the sum of five thousand dollars, as the portion of said estate from the interest of which Mrs. Mina Floyd, widow of the said deceased, was to be supported.

"January 1st, 1840.                  S. FLOYD."

And after that time the said Mina Floyd dealt with the said Stewart as her sole trustee; the defendant further states, that on the 1st day of January, 1842, the said Stewart Floyd made a calculation of said estate, so as to ascertain the amount due to each legatee under the will of said testator, from which it appeared that each share of said estate amounted to twelve hundred and ninety dollars, and on that day the said Stewart, as trustee for the female complainants, gave to defendant a receipt, of which the following is a copy, to wit:

"Received of the executors of John Floyd, deceased, the sum of twelve hundred and ninety dollars, as the portion of the children of Martha Reese, deceased, in the estate of said deceased, which has been sold.

"January 1st, 1842.                  S. FLOYD,
                               "Trustee."

The defendant accounts for the fact, that the receipts of William Johnston, and Mary Jane Reese, express the sums therein named to have been received from the executors, instead of from Stewart Floyd as trustee, only that the body of said receipts were not written by the said Stewart, and that it was an oversight in him not to have observed their form, and this defendant is well satisfied that the said Mary Jane and her father intended to rely solely on the said promissory note of the said Stewart, taken in said settlement, as neither of the complainants, or the said William Johnston, or the said Thaddeus B. Reese ever said anything to the defendant indicating an intention to look to him for anything concerning the interest of complainants in the estate of John

Floyd, deceased, or that would indicate an opinion that the defendant had anything to do with it, or was in any manner liable for it, until their said bill of complaint was filed.

The exhibits to the complainant's bill were:

1. An inventory and appraisement of the estate of John Floyd, deceased.

2. A return of the sale of the perishable estate of John Floyd, deceased, sold on a credit until 25th December, 1839, by Stewart Floyd, one of the executors, amounting to $4,689.78.

3. A return of the sale of the negroes, and part of the land belonging to the estate of John Floyd, deceased, sold on the first Tuesday in January, 1839, on a credit until the 25th of December, 1839, sale bill returned by Stewart Floyd, and amounting to $15,326.66.

4. Return made by Stewart Floyd, showing disbursements made for the estate of John Floyd, deceased, amounting to $4,789.52½.

5. Return showing receipts for the estate of John Floyd, deceased, amounting in the aggregate to $770.89, and disbursements for said estate amounting to $3,564.37½.

6. The will of John Floyd, deceased.

The exhibits to defendant's answer were—

The four receipts copied in the answers, and a calculation of said estate made by Earnest L. Wittich, showing the whole amount due from the executor on the 1st day of January, 1845, to be $14,457.26, which sum divided between nine legatees make due each $1,606.36.

On trial of the case in the Court below, the only evidence adduced were the bill, answer, and exhibits to the bill and answer.

The presiding Judge charged the jury as follows:

"That John J. Floyd, not having participated in the management of the estate, no decree could be made by the jury against him; that although said John J. Floyd had qualified as executor, yet he was not liable if the estate had been managed entirely by his brother, and wasted by his brother, Stewart, his co-executor, although it did appear that funds enough to cover the entire claim of the complainants, arising from the indebtedness of the said John J. Floyd, to the estate had been paid over by him to his executor, such indebtedness being for purchases made by him at the executor's

sale made by his brother; it being his duty to pay as other purchasers." The presiding Judge further charged the jury: "that with regard to a note which the evidence showed had been made to Mary Jane Reese, now Mrs. Mary Jane Mosely, by Stewart Floyd in his lifetime, and which was admitted to have been given to her by Stewart Floyd on a settlement of the amount coming to her as legatee under the will of the said John Floyd, deceased, the jury might look to the matter of diligence, which had been used by Mary Jane Reese, now Mrs. Mosely, in enforcing its collection, upon the question, whether the taking of said note discharged the claim of the said Mary Jane to go back upon the said Stewart as executor; that whilst it was true, that a note given under such circumstances was not a payment unless it was agreed to be received as such; yet if it appeared that two years and a half had intervened between the execution of said note, and the death of the said Stewart Floyd, during which time the said payee had not sought to enforce the collection of the note, was a circumstance from which the jury might find that, because she had not used proper diligence in seeking to enforce the collection of the note in that time, she had lost her right to look to her original claim against the estate, and the said note *"pro tanto"* should be held as payment."

All and every part of this charge was excepted to by complainant's counsel and are assigned as error:

The jury returned the following verdict:

We, the jury, find and decree in favor of John J. Floyd individually. We further find and decree that the complainants, Albert G. Mosely and wife, and Ann Eliza Johnston, have each of them received their interest in the residuum under the last will and testament of John Floyd, deceased. We further find and decree that Stewart Floyd, as the executor of John Floyd, deceased, had reduced to his possession the sum of five thousand dollars from the interest of which Mina Floyd, the widow of the testator, was to be supported, and that before his death, the said Stewart Floyd had wasted or appropriated the same to his own use. We further find and decree that the complainants, Mary Jane Mosely and Ann Eliza Johnston, are each entitled to one-half of one-eighth of said five thousand dollars, to wit: the sum of seven hundred and seventy-seven dollars and seventy--

eight cents, which said sums. we find and decree shall be paid over by the sheriff out of the money in his hands raised from the sale of the individual property of Stewart Floyd, deceased, to John J. Floyd, surviving executor of John Floyd, deceased, to be paid by him to Albert O. Mosely and wife, and Ann Eliza Johnston, respectively, as hereinbefore decreed, at the death of the said Mina Floyd; and we further find and decree that the costs of this proceeding be paid out of their funds in the hands of the sheriff, raised as aforesaid."

The charge of the Judge, and the decree rendered, constitute the errors complained of in this case.·

JUNIUS WINGFIELD, for plaintiffs in error.

AUGUSTUS REESE, for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

This was a bill filed by the complainants, plaintiffs in error, against John J. Floyd and others, for account.

John Floyd, late of the county of Putnam, by his last will, appointed his two sons, Stewart and John J. Floyd, the principal defendants in this case, executors thereof, and by the 4th item directed all the balance of his property, not otherwise specifically disposed of, to be sold; and from the proceeds he gave to his two sons, the said Stewart and John Floyd, the sum of five thousand dollars, in trust, to pay the interest thereon to his widow, Mina Floyd, during her life, and at her death, to be divided equally among his children, or the representatives of deceased's children, in the manner specifically stated therein. The balance of the proceeds of the sale was to be divided equally among his children, or representatives of children, of whom there were eight, in all, or rather eight shares or parts into which this residuum was to be divided: Martha Reese, the wife of Thaddeus Reese, and mother of complainants, Ann Eliza and Mary Jane, being one; Mrs. Reese dying before her father, he subsequently, by a codicil to his will, bequeathed to these, her children, the share directed to be given to her by the original will. ·

Both of the executors were qualified, but Stewart alone executed the will; the defendant, John J., taking no part what-

ever in the active administration thereof. The property of the testator was sold by Stewart, as executor, John J. attending the sale and buying much of the property, gave his notes for the same to his brother, and took them up as other purchasers.

The five thousand dollars, in which the widow had the life interest, went into the hands of Stewart, as one of the trustees named in his father's will, for that purpose, he executing a receipt to the executors for the same, as trustee, John J. Floyd not appearing to have accepted that trust.

. Stewart Floyd, during his life, settled with and paid to the complainant, Johnson and wife, for all interest or claim they had on him in that right under the will, other than their part of that fund in which the widow had a life estate. He also, on the 15th day of November, 1850, had a settlement with Mary Jane, the other complainant, then of age and unmarried; when the amount due to her under the will, exclusive of her interest in the five thousand dollars set apart for the widow for life, was ascertained to be twelve hundred dollars; and in settlement of this amount, the said Stewart gave to her seven hundred dollars in money, and his note for five hundred dollars, due on the first day of January next thereafter, and she executed to him a receipt, of which the following is a copy:

"Received of the executors of John Floyd, deceased, twelve hundred dollars, under the will of said John Floyd, 15th November, 1850.         MARY JANE REESE."

Stewart Floyd, subsequently to these settlements in October, 1853, departed this life insolvent, having appropriated to his own use, or wasted, the five thousand dollars in which his mother had the life interest, and without having paid the note given to the complainant, Mary Jane, or any part of it; all of his property having been seized and sold by the sheriff under common law executions against him, in favor of various creditors.

The bill was filed by all the complainants, to charge the defendant, John J. Floyd, as co-executor, with the payment of the five thousand dollars, or rather with their share, which was the one-eighth part of the sum, after the termination of the life interest. Failing in this, to have that interest secured and set apart from the proceeds of the sales of the property of said deceased, Stewart Floyd, under the provisions of

"An Act for the better protection and security of orphans and their estates," approved February 18th, 1789, (*Cobb's Dig.* 288), and by the complainants, Mosely and wife, to charge defendant (Floyd) as executor, with the payment of the note given to the said Mary Jane, before her marriage, by Stewart Floyd, in his lifetime, for five hundred dollars, alleging that it was not received by her as a payment, but as a memorandum of the balance due her on that account; (this allegation was denied by defendant, who asserted that it was taken as a payment); but failing in charging defendant (Floyd) with its payment, the bill sought to charge the fund in the sheriff's hands with its payment, as a debt due by the deceased, in his character as executor, and therefore a preferred debt in the same way, as the debt of two thousand dollars was a preferred one.

The cause was submitted to the jury on the bill and answer, and no other evidence offered.

On these facts, two questions were made and argued before us:

1st. Whether the defendant, John J. Floyd, was liable, individually, for the waste committed by his co-executor, the deceased, Stewart Floyd?

2d. Whether the note for five hundred dollars, given by Stewart Floyd to complainant, was received as a payment or as a mere memorandum, as evidence of the amount of the debt? If the former, then neither is the defendant, nor the funds in the hands of the sheriff, chargeable with its payment as a preferred debt.

1. It is not pretended that the defendant is liable for any of the acts or waste of his deceased co-executor, but those to which he actively contributed; that rule is conceded. But it is claimed, that the defendant qualified as executor, and subsequently purchased property of the testator and paid the money for such purchases to his co-executor, that he, in doing so, actively contributed to the waste; that he ought to have retained what he was indebted for purchases, in his own hands, and paid it out only in execution of the trusts of the will, and by not doing so, but in paying it over to his co-executor, he became liable *pro tanto* in this account.

If we assented to the proposition—which we do not—we could only charge the defendant with the amount paid over by him that was actually diverted from the trust and wasted

by the co-executor. And there is nothing in the record to show that any part of the money paid by defendant into the hands of his co-executor was actually wasted or misapplied. It is not improbable that the money or payments made by defendant to his co-executor were properly applied by him to the payment of debts, legacies or otherwise, in execution of the will. Before the defendant is made chargeable, there ought at least to be a *prima facie* case made against him. That has not been done. But we can not admit the proposition to be true, that when the heirs, legatees or distributees of an estate permit one executor to bid for and purchase property at a sale by his co-executors, and give his notes therefor as other purchasers, and he subsequently pays over the money due on his notes so given, in discharge of his liability, and that money is wasted, that such executor, so buying and paying for his purchases, is liable for such waste. If it be conceded, as it was in this instance, that the executor was a competent purchaser—for those interested in the estate had acquiesced in and ratified his right to do so—then such executor, so buying at the sale of his co-executor, and, like all other persons, complying with its terms, must, like other purchasers, pay his notes in order to cancel, discharge and get possession of them. The money he pays over is his own, and not the estate's, and did not become the property of the estate until it was paid over. His co-executor could have traded the notes; could have enforced their collection in a Court of Law, as his own, treating the sale as an execution of the trust, and not the collection of the money from the purchasers; in fact, the law so regards a sale, as an administration. Then, how could the fact of the defendant's paying his own money over, in the necessary satisfaction of a debt legally and properly incurred, be regarded as an act contributing to the waste and misapplication of trust funds by his co-executor? We do not think it can be so. Now, if funds belonging to the trust had come to the hands of defendant from any source, and he had paid it over to his co-executor for any reason, and that money should be wasted, the defendant would be liable for the same to any one interested in the estate.

There is still another reason why the defendant is not liable for the five thousand dollars set apart by the 4th item of testator's will for the use of his widow during life. That money

was raised and received by the deceased executor, not as executor, but as trustee under the will; that certainly relieved the defendant from liability for it, as executor, and he can not be charged with it, as trustee, for he never accepted, or acted upon, that trust.

2. For the reason already given, we do not hold the defendant to be chargeable with the note for five hundred dollars, given by Stewart Floyd to the complainant, Mary Jane. But there is another that does not apply to the other question, and that is this: Conceding that, at the time the note was given, the defendant was liable to the payee, the giving that note by Stewart Floyd, and the taking of it as a security for the money by the payee, effectually discharged the defendant from any further liability for that debt. "While the mere giving a note does not discharge the original indebtedness, unless it be accepted as payment at the time, it is, nevertheless, equally true, that if the creditor changes the nature or character of the debt, as by taking the note of one of the parties, and giving day of payment, the other is exonerated. He has a right to suppose that he is no longer looked to as a debtor." *Stone vs. Chamberlain & Bancroft,* 20 *Ga.* 262.

3. Then, as to the other only remaining question in the case, was the note given and accepted as payment, or merely as a memorandum of the indebtedness? If the former, then the complainant's equitable claim on the fund from the sale of the deceased's property is gone.

Whether, as a payment, depends entirely upon the intention of the parties to the transaction at the time of its execution. The only data we have to ascertain that intention, are the note, the receipt given at the time, and the acquiescence of the complainant. From the note, we infer nothing one way or the other. But the receipt, we think, is a pretty clear indication that the note was given and received as a payment. The ascertained indebtedness was twelve hundred dollars, a part of which was paid in money, and a part in this note; but one receipt was given, and that for the entire sum of twelve hundred dollars, the money and the note being equally treated as money; no distinction was made. The money was surely treated as a payment, and if so, why was not the note? The receipt intended as evidence of the payment, speaks for the note as well as the money.

Mosely et al. vs. Floyd et al.

Besides, the maker of this note lived some two years and a half after its execution, and was, at its date, reputed to be in good and solvent circumstances. If it had been taken as a mere memorandum or evidence of the amount of the indebtedness, it is very probable that the same reasons that impelled the accounting would have induced an enforcement of the demand by suit. As no such attempt was made, for so long a time, and while the maker was in life, it is but fair to suppose that it was intended as a payment, and the note held as a satisfactory investment of the money. We do not hold this to be conclusive, by any means, but sufficient as a foundation for the charge complained of; that is, that the jury might look to this fact as a circumstance indicating that the note was intended as a payment.

The judgment of the Court below is in accordance with our view of the rights of the parties.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.