# UNITED STATES NAT. BANK OF RED LODGE, Respondent, *v.* SHUPAK et al., Appellants.

(No. 3,891.)

(Submitted March 13, 1918. Decided April 8, 1918.)

[172 Pac. 324.]

*Negotiable Instruments—Demand Notes—Presentment—"Maturity"—Banks and Banking—Agency—Checks.*

Negotiable Instruments Law—Character of Act.
1. The provisions of the Negotiable Instruments Law (sec. 5842 *et seq.,* Rev. Codes) deal with negotiable instruments, and not with instruments non-negotiable in character.
Negotiable Instruments—Demand Notes—Presentment.
2. Presentment for payment is not necessary to charge the makers of a demand note payable at a particular place.

Same—Delay in Bringing Action—When not Defense.

3.  Plaintiff's delay in bringing action on a negotiable promissory note or failure to present it for payment at an earlier date than it did was no defense so long as the action was brought within the period of the statute of limitations.

Same—Tender of Payment—Statutes.

4.  *Held,* that section 5918, Revised Codes, providing that where a note is by its terms payable at a special place and the maker is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment by him, has no application to a demand note.

Same—"Maturity."

5.  "Maturity" of a note within the meaning of section 5918, Revised Codes, is the time when a note or bill becomes due.

Same—Maturity—Date of, How not Determined.

6.  Where the makers of a demand note did not keep money on deposit in a bank to meet it, but increased or diminished the deposit as the exigencies of their business permitted or required, they could not select a particular date at which their balance was sufficient to meet it and insist that the note matured at that particular time.

Same—Banks—Agency.

7.  *Held,* that section 5935, Revised Codes, providing that an instrument made payable at a bank is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon, creates the bank the agent of the maker and does not authorize it to receive payment for the holder.

Same—Banks—Collections—Duty of Agent.

8.  A bank which undertakes to collect commercial paper for a customer must, in the exercise of common prudence and ordinary care, select as a subagent someone other than the party who is to make payment.

[As to liability of banks as agents for collection, see note in 34 Am. Dec. 307.]

Same.

9.  The above rule (paragraph 8) *held* inapplicable where the bank undertaking to collect on a note was acting for itself and the bank to which it was sent was not expected to pay it, two of its directors being the makers thereof.

Same—Collections—Payment in Money—Duty of Agent.

10.  An agent has no implied authority to accept payment in anything but money.

Same—Checks—When Payment—When not.

11.  A check not being money but merely an order for money its acceptance by an agent in discharge of an indebtedness is conditional upon its payment, in the absence of an agreement to the contrary.

Same—Worthless Checks—Payment.

12.  Giving a check which is worthless because drawn upon an insolvent bank does not pay a debt.

*Appeals from District Court, Carbon County; A. C. Spencer, Judge.*

ACTION by the United States National Bank of Red Lodge, Montana, against Harry Shupak and Joe Kuchinski, copartners

as Shupak & Kuchinski. From a judgment in favor of plaintiff and an order denying their motion for a new trial, defendants appeal. Affirmed.

*Messrs. Goddard & Clark, Mr. E. B. Merrill* and *Mr. R. G. Wiggenhorn,* for Appellants, submitted a brief; *Mr. O. F. Goddard* argued the cause orally.

*Messrs. Johnston & Coleman* and *Mr. John G. Skinner,* for Respondent, submitted a brief; *M. W. M. Johnston* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In August, 1913, Harry Shupak and Joe Kuchinski executed and delivered to the Bridger State Bank their promissory note for $5,000. On the day following, the Bridger bank for value indorsed and transferred the note to the United States National Bank of Red Lodge. In April, 1914, the Red Lodge bank sent the note to the Bridger bank for collection. In June the Bridger bank sent what purported to be a note renewing the former one, but which was in fact a forgery. The genuine note was retained by the Bridger bank until January 21, 1915, when it was presented to the makers for payment. They gave their check on the Bridger bank for the amount of the principal and interest, and received their note. On January 30, 1915, the Bridger bank failed and the state examiner took charge. Later a receiver was appointed and numerous forgeries by Hough, the president of the Bridger bank, including the one above, were discovered. At the time the genuine note was delivered up to the makers, they had to their credit on the books of the Bridger bank a sum in excess of the amount of the check which they gave in payment of the note, but the bank itself was then insolvent and did not have funds in its vaults and with its correspondents sufficient to pay the check, and no attempt was made to charge the check to their account or to enter it upon the books

of the bank. Shupak and Kuchinski were directors of the Bridger bank, and Kuchinski was its vice-president. This action was brought by the Red Lodge bank to enforce payment of the genuine note. At the conclusion of the trial the court below directed a verdict for plaintiff, and from the judgment entered thereon and from an order denying them a new trial, defendants appealed.

1. It is insisted by appellants that the note is non-negotiable. If we assume that it is and that the Red Lodge bank took it subject to the equities and defenses existing in favor of the makers at the time of the transfer, these defendants then might interpose any defense to this action which they had against the Bridger bank on August 22, 1913. (*Cornish* v. *Woolverton,* 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4; *Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601.) But defendants plead no such defenses; on the contrary, their testimony discloses that they received full value for the note and that they had no defense against it at that time.

If we should accept appellants' contention that the note is non-negotiable, the foregoing discussion would be conclusive, for their further argument based upon certain sections of our [1] Negotiable Instrument Law would have no pertinency whatever. The provisions of that Act deal with *negotiable* instruments, not with instruments non-negotiable. (3 R. C. L. 1172.)

2. We are of the opinion, however, that the note is negotiable. By its terms it is payable on demand, and appellants insist that plaintiff was guilty of negligence in failing to present it for payment within a reasonable time and that the negligence worked prejudice to them, since they were ready, able and willing to pay it long before the Bridger bank failed. By this action [2] plaintiff does not seek to hold anyone but the makers— the parties primarily liable for the payment of the note, and as to them presentment was not necessary.

3. Section 5918, Revised Codes (The Uniform Negotiable Instrument Act), provides: "Presentment for payment is not neces-

54 Mont.—35

sary in order to charge the person primarily liable on the instrument, * * * But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and endorsers." (8 C. J. 529; 7 Cyc. 963.) This section defines the purpose of presentment and is not modified by subsequent sections. Section 5919 specifies the time within which presentment must be made in order to charge those secondarily liable, and 5920 indicates what constitutes such presentment. The rule that presentment for payment is not necessary to charge the makers applies equally to a demand note payable at a particular place. (*Farmers' Nat. Bank* v. *Venner*, 192 Mass. 531, 5 Ann. Cas. 690, 78 N. E. 540.)

So long as this action was brought within the period of the [3] statute of limitations, defendants cannot claim exemption from liability by reason of plaintiff's failure to present it for payment or commence this action at an earlier date.

Section 5918, Revised Codes, further provides: "If the [4] instrument is by its terms payable at a special place and he [maker] is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part." This provision, we think, can have no application to a demand note which "admits a present debt to be due to payee or holder, is payable absolutely and at all events and requires no other or previous demand than the institution of [5] a suit thereon." (*McFarland* v. *Cutter*, 1 Mont. 383.) "Maturity," as used in this provision, means the time when a note or bill becomes due. (Bouvier's Law Dictionary; Black's Law Dictionary; *Gilbert* v. *Sprague*, 88 Ill. App. 508.) It does not seem reasonable that the provision above contemplates that a man will borrow money on a demand note only to keep it on hand to meet the note which evidences his debt. But for a stronger reason the provision cannot be invoked in this instance.

The note being due on demand was payable as soon as issued [6] (7 Cyc. 848); but it was not until January 8, 1914, that defendants had to their credit in the Bridger bank, funds suffi-

cient to meet it. Thereafter from April 15 to June 20; from July 30 to September 8; and from September 28 to December 23, in 1914, this balance was not sufficient. In other words, they did not keep money on deposit to meet this note but increased or diminished their deposit as the exigencies of their business permitted or required. They cannot select a particular date upon which their balance was sufficient and insist that the note matured at that particular time.

The note in question was by its terms payable at the Bridger [7] bank, and defendants insist that in failing to charge the note to their account whenever they had funds sufficient to meet it, the Bridger bank was guilty of negligence which is imputable to plaintiff. Section 5935, Revised Codes, provides: "Where the instrument is made payable at a bank it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon." The authorities which have construed this section of the Uniform Negotiable Instruments Law are quite generally agreed that it merely creates the bank the agent of the *maker* and does not authorize it to receive payment for the holder. (8 C. J. 602; 3 R. C. L. 1289.) The duty which the bank owes to the maker arises from the relation of debtor and creditor, and not from the fact that it is the agent of the holder.

It is insisted, also, that the Red Lodge bank was guilty of [8] negligence in selecting the Bridger bank as its collecting agent, because the note was payable at that bank. We approve the rule, so often stated by the courts, that a bank which undertakes to collect commercial paper for its customer, must, in the exercise of common prudence and ordinary care, select as a sub-agent someone other than the party who is to make payment. (*German Nat. Bank* v. *Burns,* 12 Colo. 539, 13 Am. St. Rep. 247, 21 Pac. 714.) The rule cannot have any application here, for [9] two reasons: (a) The Red Lodge bank was acting for itself as the owner and holder of the note and owed no duty to anyone; (b) the Bridger bank was not interested in the note and was not expected to pay it. It was merely the agent of the

Red Lodge bank to collect the note from the makers who were responsible.

4. Defendants cannot insist that by giving their check on the Bridger bank they paid this note.

(a) It is elementary that an agent has no implied authority [10, 11]  to accept payment in anything but money.  (3 R. C. L. 1284.)  A check is merely an order for money and in the absence of any agreement to the contrary, its acceptance in discharge of an indebtedness is conditional upon its payment. (8 C. J. 568; Eaton & Gilbert on Commercial Paper, 538; Daniels on Negotiable Instruments, 6th ed., sec. 1623.)  In *Taylor* v. *Wilson*, 11 Met. (52 Mass.) 44, 45 Am. Dec. 180, it is said: "A check is merely evidence of a debt due from the drawer.  Whether it shall operate as payment or not depends on two facts; first, that the drawer has funds to his credit in the bank upon which it is drawn; and second, that the bank is solvent, or, in other words, pays its bills and the checks duly drawn upon it, on demand.  The receipt of a check, therefore, before presentment, if there is no laches on the part of the holder, is not payment of the debt for which it is delivered."

(b) At the time defendants gave their check, it was worthless, because of the insolvency of the Bridger bank.  It could not be paid and by giving it, defendants did not part with anything [12]  of value or alter their situation to their prejudice.  Giving a worthless check does not pay a debt.

5. None of the special defenses pleaded can be maintained.

Recurring to the questions already determined,—that presentment was not necessary in order to bind the makers, and that plaintiff's delay in commencing the action constitutes no defense,—let us assume that the Red Lodge bank had sent this note for collection to a responsible third party, who presented it for payment on January 21, 1915, received defendants' check on the Bridger bank, which was dishonored when presented— as it would have been—the situation of defendants could not have been different from what it is; so that the employment of

the Bridger bank as the collecting agent could not have operated to the defendants' prejudice.

The judgment and order are affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.