GALLAHER, RESPONDENT, *v.* THEILBAR REALTIES, APPELLANT.

(No. 6,981.)

(Submitted January 26, 1933. Decided February 10, 1933.)

[18 Pac. (2d) 1101.]

422

*Messrs. Molumby, Busha & Greenan,* for Appellant, submitted a brief; *Mr. Loy J. Molumby* argued the cause orally.

*Mr. W. P. Costello,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

H. E. Gallaher brought action against the Theilbar Realties, a corporation, upon an assigned claim for $460, with interest from January 1, 1930, for goods, wares and merchandise alleged to have been sold and delivered to the defendant, at its special instance and request, by the A. W. Mettler Sheet Metal Workers, of Great Falls.

By answer the defendant interposed a general denial, the defense of payment, and the defense that the credit was extended, not to the corporation, but to Fred Theilbar, an individual, and was settled by the giving and acceptance of his promissory note, of date December 21, 1929.

The affirmative matter was denied by reply and the cause tried to the court and a jury; the trial resulted in verdict and judgment for the plaintiff. The defendant has appealed from the judgment.

The record discloses the fact that the "Theilbar Realties" is a family corporation composed of Ethel Theilbar, president, Fred Theilbar, secretary-treasurer and manager, and one Gruble, a relative who lives in another state. The corporation owns real estate in Cascade county. Fred Theilbar owns no property; in addition to managing the affairs of the corporation, he engaged, sporadically, in the business of contracting and building, and, over a period of years prior to 1930, purchased from the assignor of plaintiff, a copartnership consisting of A. W. Mettler and D. T. Burness, supplies such as are used in building and repairing houses, which supplies were charged on counter slips, day books, and journals indiscriminately to "Fred Theilbar," "Fred Theilbar Company," "Theilbar Company," and "Theilbar Realty Company," but all of such charges were carried forward to the ledger to the account of the defendant. However, bills were rendered to "Fred Theilbar"; twelve of these, for the year 1929, were introduced in evidence, the last, of date December 1, 1929, was for $488.30, which is marked "Paid, December 21, 1929," which legend is initialed "D. T. B." It is conceded that on the

date mentioned Fred Theilbar called at the office of the creditor and paid to D. T. Burness the sum of $28.30 on account, and delivered to Burness his personal note for the balance of $460, payable sixty days after date, with interest at eight per cent. per annum, which note was accepted without demur, and thereupon Burness, in charge of the books of the copartnership, stamped the last bill rendered "Paid."

There is a sharp conflict in the testimony as to whether the supplies furnished were purchased for the improvement of property owned by this defendant, or for use by Theilbar in his independent operations, and with this question we are not concerned; the jury determined it in favor of the plaintiff; so, for the purpose of this appeal, the account was against the defendant corporation; this account was assigned to the plaintiff without mention of the note theretofore accepted by the assignor.

At the close of plaintiff's case, defendant moved for judgment of nonsuit upon the ground, among others, that the note had never been returned or tendered to the defendant "or in any way canceled by assignor." Thereupon counsel for plaintiff tendered the note to Fred Theilbar, to which tender the defendant objected as coming too late; the court did not rule upon the matter, but expressed the opinion that "it is a little late at this time," whereupon counsel for plaintiff declared, "I think it is wholly immaterial, because the note is worthless, your Honor; we can show that." Thereafter the defendant added to its grounds for nonsuit, that the testimony discloses that a novation had occurred, and that the obligation was extinguished "if it ever existed." The motion was denied.

On the vital question as to what took place on December 21, Burness testified: "28.30 * * * was paid at that time. Mr. Theilbar also gave me a note for the balance; * * * that, with the $28.30 payment made at that time, did not liquidate the account at that time, but that was the full amount of the account; he told me then that he would pay me in sixty days and I wouldn't have to come over and see him so much; I said 'all right.' The note has never been paid." He testified

further that he did not remember receipting the bill at the time, but that the initials under the stamp "Paid" "is my writing," and "constitutes a receipt initialed by myself."

Theilbar testified that Burness came to see him regarding settlement of his account several times; on the last occasion Burness asked him if he could not pay part and give his note for the balance, as he (Burness) "wanted to clean it up on their books." This the witness promised to do, and, a few days later, he went to the office and there paid the $28.30 in cash and gave Burness the note for $460. The witness then said: "He accepted the note at that time and he says, 'You better give me that bill and I will mark it paid,' and I handed back this bill and he stamped it and put his initials on the bottom. * * * The only purpose was cleaning up the account and closing it on his books; that is all he said." Again Theilbar said the note "was given in settlement of the account; that is what Mr. Burness said, that he wanted to get it settled up and off the books. I owe them now $460. The Theilbar Realty Company does not owe the Mettler Sheet Metal Workers anything. The $460 note * * * was accepted by them at the time they marked the open account paid, absolutely."

One Lee Morrell testified that he went with Theilbar to the Mettler shop, and there heard Theilbar tell Burness that he "came to settle up"; that Burness said "all right," whereupon Theilbar handed Burness some money and a note, and Burness said, "Just wait a minute and I will receipt that"; he then receipted the bill which Theilbar handed to him.

Burness on rebuttal testified that Morrell was not present, but said, "He might have been outside in the shop, but he wasn't in the office; he might have been standing outside." As Morrell merely corroborated Theilbar, and Burness did not attempt to contradict the latter's testimony, this conflict in the evidence is unimportant.

Burness' testimony in chief does not materially differ from that of Theilbar as to what took place on December 21, 1929; his volunteered conclusion of law that the delivery of the money and note "did not liquidate the account" does not

constitute a conflict as to the disputed question of "payment"; his statement that he did not remember receipting the bill does not contradict the positive testimony that he did so. (*Lindblom* v. *Employers' etc. Assur. Corp.*, 88 Mont. 488, 295 Pac. 1007; *Lasby* v. *Burgess*, 88 Mont. 49, 289 Pac. 1028.) In fact, the statement of Burness that the initials verifying the stamp marking the bill "Paid" were in his writing is a sufficient admission that he did receipt the bill.

We are therefore called upon to determine, as a matter of law, whether or not the uncontradicted evidence to the effect that Fred Theilbar, as an individual, agreed to "settle" the account in suit by paying a part thereof in cash and giving his personal note for the balance, and that Burness on receipt of the cash and note voluntarily receipted the statement of the account, constituted payment.

In the absence of an agreement, either express or clearly implied, "payment" means the discharge of a debt or obligation in money (sec. 7429, Rev. Codes 1921; *Borland* v. *Nevada Bank*, 99 Cal. 89, 33 Pac. 737, 37 Am. St. Rep. 32); and the mere delivery and acceptance of a note for the amount of the account, whether it be the note of the debtor (*Patten & Davies Lumber Co.* v. *McConville*, (Cal. App. 1932) 16 Pac. (2d) 789; 48 C. J. 611; and see *United States Nat. Bank* v. *Shupak*, 54 Mont. 542, 172 Pac. 324), or of another (*Mannakee* v. *McCloskey*, 63 S. W. 482, 23 Ky. Law Rep. 515; *Hunter* v. *Moul*, 98 Pa. 13, 42 Am. Rep. 610), does not operate to discharge the debt. However, by agreement anything of value may be given by the debtor and accepted by the creditor in satisfaction of a debt, and, if such was the agreement, the delivery and acceptance constitute payment and discharge the indebtedness. (21 R. C. L. 9 and 72; *Tennessee Bond Cases*, 114 U. S. 663, 5 Sup. Ct. Rep. 974, 1098, 29 L. Ed. 281; *Parker* v. *Carter*, 91 Ark. 162, 120 S. W. 836, 134 Am. St. Rep. 60; *Borland* v. *Nevada Bank*, above.) Where such an agreement is shown, the delivery and acceptance of either the note of the debtor (*Valley Merc. Co.* v. *Bailey*, 68 Mont. 79, 216 Pac. 789) or a third party's note (*American System of Rein-*

*forcing Co.* v. *Breakers Hotel Co.,* (Cal. Sup. 1932) 17 Pac. (2d) 138; 1 C. J. 548, and cases cited) will discharge the original indebtedness, whether or not the note is thereafter paid. (48 C. J. 614; *Lincoln Sav. Bank* v. *Allen,* 82 Fed. 148, 27 C. C. A. 87.)

This rule does not require that the agreement be by express ██ ██ words; the circumstances and conduct of the parties taken together may show an understanding that the paper is taken in satisfaction of the debt or estop the creditor from claiming the contrary (20 Cal. Jur. 925), and it has been held that, where the statement of account for which the note was given was indorsed "Received payment by note due June 17th," the evidence was sufficient to support a finding that the note was received in absolute payment. (*Jenne* v. *Burger,* 120 Cal. 444, 52 Pac. 706. See, also, *Tyson* v. *Reinecke,* 25 Cal. App. 696, 145 Pac. 153.)

In some jurisdictions it is held that a receipt of payment by bill or note is not sufficient, in the absence of other evidence, to show an extinguishment of the original claim, while in other cases it is held that such a receipt is prima facie evidence that the bill or note was accepted as absolute payment. (48 C. J. 638.) But, where a part payment is made in cash and the balance is covered by a note, and the creditor gives a receipt as for the full amount in cash, it is said that "is a pretty clear indication that the note was given and received as a payment." (*Mosley* v. *Floyd,* 31 Ga. 564.)

A receipt is not a contract, and may therefore be explained ██ or contradicted by parol evidence (20 Cal. Jur. 956), but it is prima facie evidence of payment, and therefore the production of a receipt imposes upon the plaintiff the burden of "going forward to impeach the receipt." (48 C. J. 639.)

In the case at bar we have not only the receipt, shown to ██ have been given on a part payment in cash and part by note, but additional evidence to the effect that the agreement between the parties was that the account should be settled, closed out, or closed on the books in that manner. There was no attempt made to impeach the receipt or to explain

that it was intended to be other than it appeared on its face. There is no evidence in the record to justify the assertion made that the note was received merely to fix the amount due; there was no dispute as to the amount; and, if the parties had not agreed that the note was to be accepted in settlement and extinguishment of the open account, there was no reason for receipting the statement of the account.

No attempt was made to show that the note was accepted under any misapprehension as to the identity of the maker.

Under the applicable law heretofore stated, the defendant made a prima facie showing of payment which was not overcome in any manner; and, consequently, the implied finding that the note was not given and received as absolute payment is not sustained by any evidence.

The judgment is reversed and the cause remanded to the district court of Cascade county, with direction to enter judgment of dismissal in favor of the defendant.

Mr. Chief Justice Callaway and Associate Justices Angstman, Stewart and Anderson concur.

Rehearing denied February 23, 1933.