FALLS IMPLEMENT COMPANY, a Corporation, Plaintiff
and Respondent, v. GENERAL INSURANCE COMPANY
OF AMERICA, Defendant and Appellant.

No. 11486.
Decided December 12, 1968. Rehearing denied December 30, 1968.
448 P.2d 675

Law Offices of Howard C. Burton & H. William Coder,
H. William Coder (argued), Great Falls, for defendant-appel-
lant.

Church, Harris, Johnson & Williams, Cresap S. McCracken (argued), Great Falls, for plaintiff-respondent.

MR. JUSTICE CASTLES delivered the opinion of the Court.

This is an appeal from a judgment for plaintiff, Falls Implement Co., in a suit seeking to recover from defendant, General Insurance Company of America, on a performance bond in a building contract. The amount of the judgment was $3,662.50 plus interest and attorney fees for a sum due from one Delmar Davis, contractor, for rental of construction equipment used on Davis' contract with the Havre High School District.

Davis had a contract on the Havre High School athletic field. General, as surety and Davis as principal, executed and delivered to, the school district a payment and performance bond. The bond upon which liability is predicated contains, among other things, the following:

"PROVIDED FURTHER, That if the said Contractor fails to duly pay for any labor, materials, sustenance, provender, gasoline, lubricating oils, fuel oils, greases, coal, or any other supplies or materials used or consumed by such Contractor or his, their, or its subcontractors in performance of the work contracted to be done, the Surety will pay the same in any amount not exceeding the amount of this obligation, together with interest as provided by law:

"PROVIDED FURTHER, that the said Surety, for value received, hereby stipulates and agrees that no change, extension of time, alteration, or addition to the terms of the contract, or the work to be performed thereunder, or the specifications accompanying the same, shall in anywise affect its obligation on this bond and it does hereby waive notice of any change, extension of time, alteration, or addition to the terms of the contract, or to the work, or to the specifications".

Davis rented two machines from plaintiff and did not pay

a net amount of $3,662.50 due on them. The original charge was $4,400 but a credit of $737.50 for repair parts was arrived at by agreement of the parties. Davis completed the job sometime between December 14, 1964 and January 25, 1965. On January 2, 1965, Davis executed and gave a note to the plaintiff as evidence of the debt he owed. The trial court found specifically that "this note was taken as evidence of the debt and not as payment thereof."

Davis had an open account with plaintiff, and together with the rental amount due for equipment used on the bonded job, the total sum of $8,136.38 was owing. The note mentioned above was executed, and the open account "zeroed" out.

Subsequently Davis was adjudicated a bankrupt.

The trial court concluded that "The obligation of the defendant [General] was not discharged by the delivery of the promissory note to the plaintiff [Falls] by the contractor, Delmar Davis."

It is this conclusion and the judgment based thereon from which this appeal is taken.

Two questions are presented for review: (1) whether the execution and delivery of a promissory note by a debtor to his creditor constitute payment and (2) whether the note releases and exonerates the debtor's surety.

Appellant General rests the appeal on Gallaher v. Theilbar Realties, 93 Mont. 421, 18 P.2d 1101 (1933).

In the Gallaher case, which is not a surety bond case, the defendant Theilbar Realties was a corporation. Fred Theilbar, its secretary-treasurer and manager, engaged sporadically in contracting and building. He bought building supplies which were charged to Fred Theilbar, Fred Theilbar Company, Theilbar Company, and Theilbar Realty Company. All the charges were carried forward on the Theilbar Realties account. However, the bills were sent to Fred Theilbar. On December 1, 1929, a bill was sent to Fred in the amount of $488.30. On

December 21, 1929, Fred called at the office of the creditor and paid $28.30 on account and delivered his personal note for the balance of $460. The creditor marked the last bill "Paid". In the case this Court determined the question of whether when Fred Theilbar, as an individual, agreed to "settle" the account by paying a part thereof in cash and giving his personal note for the balance, and the bill was receipted as "Paid", such constituted payment.

This Court said:

"In the absence of an agreement, either express or clearly implied, 'payment' means the discharge of a debt or obligation in money (section 7429, Rev.Codes 1921; Borland v. Nevada Bank [of San Francisco], 99 Cal. 89, 33 P. 737, 37 Am.St.Rep. 32) ; and the mere delivery and acceptance of a note for the amount of the account, whether it be the note of the debtor, Patten & Davies Lumber Co. v. McConville (Cal.App.1932) 16 P.2d 789; 48 C.J. 611; and see United States Nat. Bank [of Red Lodge] v. Shupak, 54 Mont. 542, 172 P. 324, or of another, Mannakee, v. McCloskey, 63 S.W. 482, 23 Ky.Law Rep. 515; Hunter v. Moul, 98 Pa. 13, 42 Am.Rep. 610, does not operate to discharge the debt. However, by agreement anything of value many be given by the debtor and accepted by the creditor in satisfaction of a debt; and, if such was the agreement, the delivery and acceptance constitute payment and discharge the indebtedness. 21 R.C.L. 9 and 72; Tennessee Bond Cases, [Stevens & others v. Mobile & Ohio R. Co.] 114 U.S. 663, 5 S.Ct. 974, 1098, 29 L.Ed. 281; Parker v. Carter, 91 Ark. 162, 120 S.W. 836, 134 Am.St.Rep. 60; Borland v. Nevada Bank, above. Where such an agreement is shown, the delivery and acceptance of either the note of the debtor, Valley Merc. Co. v. Bailey, 68 Mont. 79, 216 P. 789, or a third party's note, American System of Reinforcing Co. v. Breakers Hotel Co. (1932) 217 Cal. 67, 17 P.2d 138; 1 C.J. 548, and cases cited, will discharge the original indebtedness, whether or not the note is thereafter, paid, 48

C.J. 614; Lincoln Sav. Bank [& Safe-Deposit Co.] v. Allen, 82 F. 148, 27 C.C.A. 87.

"This rule does not require that the agreement be by express words; the circumstances and conduct of the parties taken together may show an understanding that the paper is taken in satisfaction of the debt or estop the creditor from claming the contrary (20 Cal.Jur. 925), and it has been held that, where the statement of account for which the note was given was indorsed 'Received payment by note due June 17th,' the evidence was sufficient to support a finding that the note was received in absolute payment. Jenne v. Burger, 120 Cal. 444, 52 P. 706. See, also, Tyson v. Reinecke, 25 Cal.App. 696, 145 P. 153.

"In some jurisdictions it is held that a receipt of payment by bill or note is not sufficient, in the absence of other evidence, to show an extinguishment of the original claim, while in other cases it is held that such a receipt is prima facie evidence that the bill or note was accepted as absolute payment. 48 C.J. 638. But, where a part payment is made in cash and the balance is covered by a note, and the creditor gives a receipt as for the full amount in cash, it is said that 'is a pretty clear indication that the note was given and received as a payment.' Mosley v. Floyd, 31 Ga. 564.

"A receipt is not a contract, and may therefore be explained or contradicted by parol evidence, 20 Cal.Jur. 956, but it is prima facie evidence of payment, and therefore the production of a receipt imposes upon the plaintiff the burden of 'going forward to impeach the receipt,' 48 C.J. 639.

"In the case at bar we have not only the receipt, shown to have been given on a part payment in cash and part by note, but additional evidence to the effect that the agreement between the parties was that the account should be settled, closed out, or closed on the books in that manner. There was no attempt made to impeach the receipt or to explain that it was intended to be other than it appeared on

its face. There is no evidence in the record to justify the assertion made that the note was received merely to fix the amount due; there was no dispute as to the amount; and, if the parties had not agreed that the note was to be accepted in settlement and extinguishment of the open account, there was no reason for receipting the statement of the account.

"No attempt was made to show that the note was accepted under any misapprehension as to the idenity of the maker.

"Under the applicable law heretofore stated, the defendant made a prima facie showing of payment which was not overcome in any manner; and, consequently, the implied finding that the note was not given and received as absolute payment is not sustained by any evidence.

"The judgment is reversed * * *".

In the instant case, the trier of fact found as a fact that the note was *not* payment. The only evidence was to that effect, and the finding is conclusive.

As to the second question—whether the note "exonerates" defendant on the bond, we have already found that the trial court was correct in its finding that the note was not intended as payment. We are somewhat at a loss to discuss the issue of "exoneration" independently of the first question because that was the basis of the trial court's ruling and no exceptions were taken. It is like fighting a windmill to discuss all the ramifications of exoneration, but suffice it to say that, here, General has not shown how or why it was prejudical by the giving of a note solely to evidence the debt. Sections 30-501, 30-208, R.C.M. 1947, simply do not come into play. Without a showing of prejudice the surety is not entitled to discharge. National Surety Co. v. Lincoln County, Mont., 238 F. 705; 72 C.J.S. Principal & Surety §§ 187, 189; Scott v. Kyhl, 141 Mont. 523, 379 P.2d 803.

Finding no error, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, ADAIR and JOHN C. HARRISON, concur.