12 U.S. 94
 8 Cranch 94
 3 L.Ed. 499
 CROWELL AND OTHERS
v.
M'FADON.
 Feb. 16, 1814
 
 Absent. WASHINGTON, J.
 ERROR to the Supreme Judicial Court of the Commonwealth of
 Massachusetts.
 The case, as stated by DUVALL, J. in delivering the opinion of the Court, was as follows:
 
 
 1
 An action of trover for 650 barrels of flour, of the cargo of the schooner Union, was brought by John M'Fadon against Joseph Otis and the Appellants, in the Court of Common Pleas for Suffolk county, in the Commonwealth of Massachusetts, where a trial was had and judgment rendered in favor of the Defendants. From this decision there was an appeal to the Supreme Judicial Court of that state, in which the cause was again tried and a verdict and judgment rendered for the Plaintiff for $3,716 30 and costs. Joseph Otis died whilst the suit was depending in the Supreme Judicial Court.
 
 
 2
 The following are the principal facts appearing on the record in this case: The schooner Union, Benjamin Hawes, commander, with a cargo of 650 barrels of flour and five tons of logwood shipped by John M'Fadon, of Baltimore, was cleared at that port for Machias, in Massachusetts, late in the month of April, in the year 1808. She had originally cleared for Passamaquoddy, on the 26th of April, before the collector had received notice of the act of the 25th of the same month which authorised him to detain the vessel: the destination was changed to Machias, and a clearance obtained accordingly. But the original destination of the flour on board for Eas port, remained on the face of the manifest. The flour was shipped for account and risk of Josiah Dana, of Machias, and in his absence Jonathan Bartlett, of Eastport, or his assigns. The Union sailed from Baltimore the last of April and meeting with head winds, the commander put into Hymas, in the district of Barnstable. She was soon afterwards boarded by Joseph Crowell, one of the inspectors of the revenue in that district, who, on inspecting her papers, thought proper to submit them to the examination of Joseph Otis the collector. The collector, upon a consideration of the circumstances before stated, was of opinion that it was the intention of the concerned to violate or evade the provisions of the embargo laws, and therefore detained the vessel by virtue of the authority vested in him by the 6th and 11th sections of the act of the 25th of April, 1808, vol. 9, p. 68, until the decision of the president of the United States could be had thereon. The president, after due enquiry, approved and confirmed the conduct of the collector. The vessel remained in this situation until the 25th of July, when she was taken to Gageis wharf by Joseph Hawes, inspector of the port, and her cargo was landed and stored, with the assent of the agent of the owners, and the vessel discharged. On the 4th of October following the collector offered to deliver the flour to the agent on payment of the expense of storing.
 
 
 3
 The collector detained the Union under the 6th and 11th sections of the act of the 25th of April, 1808. The 6th section provides 'that no ship or vessel having any cargo whatever on board, shall, during the continuance of the act laying an embargo on all ships and vessels in the ports and harbors of the United States, be allowed to depart from any port of the United States for any other port or district of the United States adjacent to the territories, colonies or provinces of a foreign nation; nor shall any clearance be furnished to any ship or vessel bound as aforesaid without special permission of the president of the United States.' The 11th section provides that the collectors of the customs be and they are respectively authorised to detain any vessel ostensibly bound with a cargo to some other port of the United States, whenever in their opinion the intention is to violate or evade any of the provisions of the acts laying an embargo until the decision of the president of the United States be had thereupon.
 
 
 4
 With this evidence the cause came on to be heard in the Supreme Judicial Court of Massachusetts, and at the trial the judge charged and instructed the jury that, under the circumstances proved by the Defendant, neither the said collector or any person by his order, by virtue of the act aforesaid, had any right to intermeddle with or unlade the cargo of the said schooner, and that such unlading was an unlawful act and a conversion of the cargo by the Defendants; and with this direction the jury found a verdict for the Plaintiff to the amount before-mentioned. To this opinion an exception was taken and the cause was removed to this court by writ of error in pursuance of the 25th section of the act to establish the Judicial Courts of the United States.
 
 
 5
 PINKNEY, (late attorney general of the United States,) for the Plaintiff in Error,
 
 
 6
 Contended, that as the landing and storing the cargo was by consent of the agent of the owner, the only question was, whether the collector was justified, in detaining the vessel, by his honest suspicion that the intention was to violate or evade the provisions of the embargo laws.
 
 
 7
 Upon this point he insisted that it was not incumbent on the collector to show that he had reasonable grounds of suspicion. It was sufficient if he satisfied the jury that, in his honest opinion, there was such an intention.
 
 
 8
 HARPER, contra,
 
 
 9
 Contended, that the question was not whether the detention was justifiable, but whether the unlading was justifiable. If the landing was by the consent of the agent of the owner, it was a consent forced upon him by the detention of the vessel.
 
 
 10
 But congress could not mean to subject the vessel to the arbitrary opinion of the collector. The detention was not lawful unless the circumstances justified the suspicion. The collector must at least shew probable cause. The facts of the case did not authorise the suspicion.
 
 
 11
 PINKNEY, in reply.
 
 
 12
 The question is still the same. As the unlading was with the assent of the agent of the owner, it was a lawful act if the detention was lawful. The law did not mean to make the collector responsible for the sound exercise of his discretion. He was to have no guide but his own honest opinion. It is not like the case of capture as prize of war, where the officer acts at his peril, and must exercise a sound discretion and must have reasonable grounds of suspicion. But here it is put upon the opinion of the collector, and he is bound to act upon that opinion. If he fails to do so, he is liable for a misdemeanor in his office. If he honestly errs in his suspicion he is excused. Whether it be his honest opinion is a matter for the decision of the jury.
 
 
 13
 This cause was argued at last term by the Attorney General & Jones for the Plaintiffs in Error, and by Amory & P. B. Key for the Defendants in Error.
 
 
 14
 PINKNEY, attorney general,
 
 
 15
 Suggested a doubt whether an action for damages for a seizure on navigable waters was not as much a cause of admiralty and maritime jurisdiction as if the proceedings were in rem.
 
 
 16
 AMORY & KEY,
 
 
 17
 Contended, that the 11th section of the act of 25th April, 1808, only gave authority to the collector of the district who was to grant the clearance, to detain the vessel, and that the collector of another district had no right to stop a vessel passing through an intermediate district. The law gave no right to seize, but merely to detain, which shows that the authority is given only to the collector within whose official control the vessel is. The collector to whom application is to be made for a clearance is the only person to whom the discretion is entrusted. He has the best means of information, and if suspicion should be excited, it is there only that the owner can furnish the means of removing it. The opposite construction of the law would give to collectors at the mouths of our bays the whole control of our commerce, and would subject it to much vexation. The whole trade of the Chesapeake would be subject to the control of the collector of Norfolk.
 
 
 18
 JONES, in reply,
 
 
 19
 Contended, that the law authorised any collector of any district to stop and detain and vessel which might be passing through his district, if he really suspected her of an intention to violate the provisions of the embargo laws.
 
 Feb. 28th.
 
 20
 DUVALL, J.* after stating the facts of the case, delivered the opinion of the Court as follows:
 
 
 21
 'This Court is unanimously of opinion that the direction of the judge of the Supreme Judicial Court of Massachusetts was erroneous. The law of congress under which the collector acted is clear and explicit. The collector was bound by law to seize and detain the Union, on her arrival in his district, if, in his opinion, it was the intention to violate or evade any of the provisions of the embargo laws, and his conduct was approved and confirmed by the president. The landing and storing the cargo, whether to preserve it from injury or to secure it from ruin, (which, in this case, was done with the consent of the agent of the owner,) was a necessary consequence of the detention. The law places a confidence in the opinion of the officer, and he is bound to act according to his opinion; and when he honestly exercises it, as he must do in the execution of his duty, he cannot be punished for it.
 
 
 22
 The judgment of the Court below is reversed with costs.
 
 
 
 *
 JUDGE LIVINGSTON was absent when this opinion was delivered. JUDGE STORY gave no opinion, having some impression that he was, at a former period, retained as counsel in the cause, although he did not remember arguing it.