STATE ex Rel. SADLER, Respondent, *v.* EVANS, County Assessor, et al., Appellants.

(No. 7,791.)

(Submitted February 23, 1938. Decided March 2, 1938.)

[77 Pac. (2d) 394.]

*Mr. John A. Matthews,* Special Assistant Attorney General, and *Mr. H. B. Landoe,* County Attorney of Gallatin County, for Appellants, submitted an original and a reply brief; *Mr. Matthews* argued the cause orally.

*Mr. J. M. Stotesbury* and *Mr. George Y. Patten,* for Respondent, submitted an original and a reply brief; *Mr. Patten* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment awarding a peremptory writ of mandamus. The question involved is the sufficiency of the petition for the writ. It was raised by motion of defend-

ants to quash the alternative writ on that ground and by their election to stand upon their motion.

The petition alleges that defendant Brandenburg is the treasurer and defendant Evans the assessor of Gallatin county; that relator on January 7, 1938, purchased a certain described automobile from the Roman Motor Company, a dealer in new and secondhand motor vehicles at Bozeman; that relator applied to the defendant treasurer for the registration of the car for the year 1938; that at the time of so applying he "tendered to the defendant" treasurer "the sum of $11.00, the same being the amount of the license and registration fees," and that he "then and there demanded" that the treasurer "register the said automobile for the year 1938," and issue to petitioner the proper receipt for the registration fee and "the proper license plates" to be attached to the car; that the treasurer refused to accept the money, and refused to register the car, and gave as his reason that the Roman Motor Company was the owner of other motor vehicles on January 1, 1938, on which the 1938 taxes had not been paid, and declined to accept the application until all taxes of the Roman Motor Company on all vehicles owned by it on January 1st were paid in full; that before making application to the treasurer, relator submitted the application to the defendant assessor and asked him to enter on the application in the space provided thereon the full and true and assessed valuation of the automobile for the year 1938, and the assessor refused to assess the automobile.

The petition further alleges that on January 1, 1938, the automobile in question constituted a part of the stock of merchandise of the Roman Motor Company, and was assessable and taxable as a part of such stock of merchandise, and not as a motor vehicle owned by, and in the possession of, a purchaser and private owner thereof, and that under the law the automobile was to be legally classified on January 1, 1938, as merchandise owned by the dealer on which a valuation for taxation of 33⅓ per cent. of its value would be made, and not as an automobile in the hands of a private owner and user thereof, on

which a valuation for taxation of 20 per cent. of its value would be made.

The petition then alleges that defendants failed in the performance of their respective duties, and deprived relator of an assessment and registration certificate and license plates, and, in consequence, of his right to use the automobile on the highways of the state.

The peremptory writ, in conformity with the prayer of the petition, commanded the assessor to assess the car, and the treasurer to register it, upon payment of the proper tax and registration fees, and to issue a license for 1938.

As against a public officer, the writ of mandamus issues to compel the performance of an act which the law specially enjoins as a duty resulting from the office. (Sec. 9848, Rev. Codes.) It will not issue except upon a showing of a clear, legal right to the relief sought. (*State ex rel. Duggan* v. *District Court,* 65 Mont. 197, 210 Pac. 1062; *Magelo* v. *Industrial Acc. Board,* 103 Mont. 477, 64 Pac. (2d) 113; *State ex rel. Blenkner* v. *Stillwater County,* 102 Mont. 130, 56 Pac. (2d) 1085.)

Whether relator was entitled to relief here depends upon the meaning of Chapter 72, Laws of 1937. That Act has previously been before this court and upheld. (*Wheir* v. *Dye,* 105 Mont. 347, 73 Pac. (2d) 209, 216.) It requires the payment of the tax on each automobile for the current year of registration before the application for registration may be accepted by the county treasurer. It requires the applicant to submit his application to the county assessor before presenting it to the treasurer, and requires the assessor to enter on the application "the full and true and the assessed valuation of said automobile for the year for which said application for registration is made." (Sec. 1.) It makes all automobiles in the state assessable as of, and on, the first day of January of each year, and the tax is computed on the basis of the preceding year's levy. No motor vehicle shall be subject to taxation more than once each year.

In the *Wheir Case,* in speaking of the tax against the dealer in automobiles, we said: "It is suggested that where a dealer in motor vehicles has in stock certain of such vehicles on Janu-

ary 1st, and they are assessed in accordance with the provisions of Chapter 72 as a part of his stock in trade, and he, prior to paying the taxes on them, sells one of them to a purchaser who applies for registration, the assessor will on the application make another assessment on the property, and the property will be subject to double assessment and taxation. When the motor vehicle is assessed in the hands of the dealer who pays on 33⅓ per cent. of the true value, as we have seen, the tax is owing by him on that basis, and before that motor vehicle can be registered or re-registered that tax must be paid. However, no double taxation will result, for it is the duty of the county treasurer, where there is a double assessment for the same year, to collect only the tax justly due and make return of the facts under affidavit to the county clerk. (Sec. 2223, Rev. Codes.) It is said that the individual who purchases the motor vehicle from the dealer must pay the tax on the basis of 33⅓ per cent. of the true value, while other individuals and corporations will pay on the basis of 20 per cent. of the true value. But if the individual purchases a motor vehicle on which the taxes have not been paid, he is not, when he pays the tax, paying his own tax, but he is paying the tax of the dealer. The purchaser pays this tax voluntarily, for he is not compelled to buy the vehicle. * * * Presumably, the unpaid taxes were taken into consideration in fixing the purchase price of the vehicle. In fact, the county assessor does not make a new assessment when registration is applied for, as he merely notes on the application the amount of the assessment previously made against the dealer.''

On behalf of defendant Evans it is contended that since the automobile in question was presumptively assessed to the Roman Motor Company, then there was no duty upon the assessor to assess it a second time, and that since that is the only failure of duty alleged as against the assessor, the petition is insufficient as against him. This contention cannot be sustained. The petition specifically alleged that relator asked the defendant assessor ''to enter on said application in the space provided thereon for that purpose the full and true and assessed valuation of said automobile for the year for which said ap-

plication for registration was made, to-wit, the year 1938.'' That is exactly what the statute commands the assessor to do. Relator then alleged that the defendant assessor ''willfully and unlawfully refused to assess said automobile.'' This allegation was evidently relator's conclusion as to the effect of the assessor's refusal to enter on the application the full and true and the assessed valuation of the automobile. It was, we think, tantamount to an allegation on the part of the pleader that the assessor failed to comply with his request that he enter on the application the full, true, and assessed valuation of the automobile. As we said in the *Wheir Case,* he in fact makes no new assessment when the automobile has been assessed against the dealer, as here, but he must still enter on the application the valuation, which, as a matter of convenient procedure in administering the Act, should be followed by a notation that the assessment was made against the Roman Motor Company.

Under our statutes a pleading must be liberally construed with a view to substantial justice (sec. 9164, Rev. Codes), and whatever is necessarily implied in, or can be reasonably inferred from, the allegations is to be treated as directly averred. (*Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601; *Johnson* v. *Herring,* 89 Mont. 156, 295 Pac. 1100.) Tested by these rules of construction, the petition was sufficient to charge the defendant Evans with the failure to enter on the application the full, true, and assessed valuation of the automobile, as he is required by law to do. His failure to act gave relator the right to compel action by mandamus.

As to the treasurer, the situation is somewhat different. He is prohibited from issuing license plates until the tax is paid. The payment or offer to pay the proper tax, based upon the figures inserted in the application by the assessor, is a condition precedent to relator's right to relief against the treasurer, and that condition must be met before the treasurer is in default in the performance of his duties. (38 C. J. 575, 693.) When the application was presented to him, under the admitted facts, the assessor had not furnished information from which the amount of the tax could be determined, and the tax had not

been paid either by the applicant or by the Roman Motor Company. Relator did not tender or offer to pay any tax. The treasurer properly refused to accept the $11 offered to him, and properly declined to issue the license plates. The relator having failed to show a clear legal right to relief against him, the writ was improperly issued as to him. The treasurer announced to the applicant, however, that before he could issue license plates to him it would be necessary for him to pay all of the taxes of the Roman Motor Company on all of its cars owned by it on January 1st. For the benefit of the parties here, as well as for the guidance of the public, it becomes important to determine whether the treasurer's interpretation of Chapter 72 is correct.

The intent and purpose of Chapter 72, as gathered from the entire Act, is to insure the collection of the current property taxes on all automobiles authorized to use the highways. While the Act fixes the first day of January as the time of assessment of ''motor vehicles in stock, in dealers' possession or in dead storage, as well as in use,'' the obvious purpose of this provision was to make it possible to. carry out the other provisions of the Act coupling the registration and issuance of license plates with the payment of taxes.

There is nothing in the Act from which a legislative intent can be inferred that a dealer must pay his tax on all of his cars held in stock on January 1, before he can sell any one of them; nor is there anything in the law to suggest that the purchaser of one of such cars shall pay the entire automobile tax of the dealer covering other cars before he is permitted to register and obtain his license plates for the one. The statute, when treating of automobiles not held in stock but for ''use,'' treats each car as a separate unit. In other words, if a person owns two touring cars, he may apply for license plates for one on payment of the tax due on it, without at the same time paying the tax due on the other or on his other personal property. This, we think, is true also of cars held in stock by a dealer. The Act does not seek to effect collection of automobile taxes ahead of other personal property taxes, except as to taxes due on

automobiles authorized to make use of the highways, and these are then each treated separately, and also separate and apart from other personal property.

True, section 2153, Revised Codes, makes a personal property tax a prior lien upon "any or all of such property," but clearly that statute does not alter the plain purpose of Chapter 72 to enable a person who owns two touring cars to obtain license plates for one without paying the tax on the other or on his other personal property. Neither does it alter the rule that a dealer, or one who purchases from him, may obtain license plates on one car without paying the entire tax on all of the cars held in stock by the dealer on January 1. Under a somewhat similar statute, the court in *Mayor & City Council of Baltimore* v. *Luis Fine*, 148 Md. 324, 129 Atl. 356, reached the opposite conclusion, but we are not impressed with the reasoning upon which the opinion in that case rests. Were we to follow that case, the owner of two or more touring cars could not obtain license plates for one without first paying the taxes on all. The language employed by the legislature negatives any such intention.

We hold that the general purpose of our statute will be accomplished if the purchaser from a dealer be required to pay only the tax on the particular car for which he applies for license plates. As pointed out in *Wheir* v. *Dye*, supra, that tax must be on 33⅓ per cent. of the valuation, and the valuation should be the same that the car is assessed for against the dealer.

The judgment is accordingly affirmed as to defendant Evans and reversed as to defendant Brandenburg.

Mr. Chief Justice Sands and Associate Justices Stewart, Anderson and Morris concur.