MEINECKE, APPELLANT, *v.* McFARLAND, ET AL., RESPONDENTS.

No. 8852

Submitted January 10, 1949. Decided June 2, 1949.

206 Pac. (2d) 1012

516

Mr. M. J. Doepker, Butte, for appellant. Mr. Doepker argued orally.

Mr. R. V. Bottomly, Atty. Gen., Mr. Fred Lay, First Asst. Atty. Gen., for State Fish and Game Dept.

Messrs. Weir, Gough & Matson, Helena, for American Bonding Co. Mr. Matson argued orally.

DISTRICT JUDGE R. M. HATTERSLEY, sitting in place of Mr. Justice Bottomly, disqualified:

This is an action for damages brought by Lucille Meinecke, plaintiff, against John Slover McFarland, as state fish and game warden of the state of Montana, and American Bonding Company of Baltimore, defendants.

The defendants, appearing by separate counsel, filed separate general demurrers to plaintiff's amended complaint. The de-

murrers were sustained and time allowed plaintiff to further plead. Plaintiff, electing to stand on her amended complaint, declined to further plead, whereupon her default was entered and judgment of dismissal rendered. This is an appeal by plaintiff from the judgment entered.

The plaintiff assigns as error the sustaining of the demurrers to her amended complaint and the entering of the judgment against her.

Plaintiff concedes that recovery may not be had against the defendant McFarland in his official capacity as state fish and game warden of the state of Montana, nor against the state of Montana. The sole question for determination therefore, is whether the amended complaint states a cause of action against the defendant McFarland individually for the alleged failure to perform his official duty.

The general duties of the state fish and game warden are stated in section 3655, R. C. M. 1935, which, so far as here pertinent, reads: "He shall be the administrative agent of the state fish and game commission * * *"

Section 3684, R. C. M. 1935, relating to the issuance of licenses, provides: "Such license shall be procured from the state fish and game warden, or any salaried or special deputy state fish and game warden, any justice of the peace, or any person authorized by the state fish and game warden. Before giving any person other than a salaried deputy state fish and game warden, or any justice of the peace, the authority to sell or issue licenses, the state fish and game warden may exact from such person a bond not to exceed the sum of one thousand dollars, to be approved by the state fish and game warden, conditioned that such person will turn over to the state fish and game warden all sums received by him for such licenses, which said bond shall run to the state of Montana."

The state game warden determines the persons who are to sell licenses and he has the duty and responsibility of selecting such persons. He is not required to grant such authority to any and all who make application therefor or who may desire to sell

licenses. There is nothing in the law giving to every person the right to sell licenses, nor, once having had the right, the right to continue to sell licenses. The plaintiff has not alleged, nor can she say, that she had a fixed or vested right to sell licenses. Her right depended at all times upon the decision of the state fish and game warden, who had the continuing responsibility of determining who should have that right. It is clearly apparent from the statute that the state fish and game warden is vested with a wide discretion and is empowered to exercise his judgment in determining who shall have authority to sell or to continue to sell licenses. He must require of the seller a bond of not to exceed $1,000 and is also required to otherwise exercise his discretion in considering and determining the fitness of the applicant. We find nothing in the statutes to warrant the conclusion that the state fish and game warden's duty in this respect is a purely ministerial one.

In 43 Am. Jur., "Public Officers," sec. 274, p. 86, it is said: "Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi-judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as a result of an erroneous or mistaken decision, however erroneous his judgment may be, provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption."

In Crowell v. McFadon, 8 Cranch, U. S., 94, 3 L. Ed. 499, 500, the court said: "The law places a confidence in the opinion of the officer, and he is bound to act according to his opinion; and when he honestly exercises it, as he must do in the execution of his duty, he cannot be punished for it."

Kendall v. Stokes et al., 3 How., U. S., 87, 11 L. Ed. 506, 509, states: "An action will lie against a public officer only when the duty to be performed is wholly ministerial, and never in a case where judgment is to be exercised. (The United States v. Bank of Metropolis, 15 Pet. [377] 403 [10 L. Ed. 774].). * * * We are not aware of any case in England or in this country in which

it has been held that a public officer, acting to the best of his judgment and from a sense of duty in a matter of account with an individual, has been held liable in an action for an error of judgment.''

Even though plaintiff filed a bond, she acquired no fixed or ██ vested right to sell licenses. The state fish and game warden, acting within the scope of his authority and duty to the state, could suspend or revoke her authority whenever in his judgment the interest of the state required it. That he had such discretion of power cannot be denied. No liability for damages would attach to such action on his part and whether he acted affirmatively or negatively by refusing to furnish license blanks, the result was the same. Both were within his discretion and within the scope of his authority. Protection is not extended to the officer for his own sake, but because the public interest requires full independence of action and decision on his part, uninfluenced by any fear or apprehension of consequences personal to himself. See Robinette v. Price, 214 Minn. 521, 8 N. W. (2d) 800, 807.

In Coldwater v. State Highway Comm., 1945, 118 Mont. 65, 162 Pac. (2d) 772, 777, this court said: ''We have held that in carrying out the mandates of the Highway Act the commission acts in a governmental capacity, and in this instance acted within the scope of the duties imposed by that Act. Under such circumstances, if the commission itself cannot be held liable, neither may the individual members thereof, in the absence of legislative sanction, no showing of actual willful or malicious negligence on their part being made. As stated, the method of the performance of the duties imposed with reference to the construction, maintenance and repair of roads is discretionary. The crux of the complaint is negligence in failure to repair the highway and to place proper warning signs. No malice or corruption is imputed to defendants.''

The duty of appointing or selecting honest and capable persons to sell licenses is one owed to the sportsmen of the state and to the public generally. It is quasi judicial and discretionary

rather than ministerial in character. The method of performance of such duty is also discretionary. No wilfullness or malicious negligence has been alleged and no malice or corruption has been imputed to the defendant, McFarland.

In order to recover in tort on the theory of failure to perform some official duty of a ministerial character, plaintiff must point out some statutory obligation on the part of the public officer. No attempt is here made to do this. In fact, it could not be done because the duties of the state fish and game warden are quasi judicial and not ministerial. Failing to point out a statutory duty, plaintiff could not show a right to recover without stating in her pleading facts from which it would appear as a matter of law that the defendant McFarland owed an absolute, specific, and imperative duty to plaintiff to furnish her with license blanks. Weise v. Tate, 45 Ill. App. 626. No such facts are alleged.

The statement that the defendant "wrongfully failed to perform his official duty to supply the plaintiff with license blanks" is not a statement of facts but merely the statement of a bald conclusion of law and must be disregarded. Crenshaw v. Crenshaw, Mont. 1947, 182 Pac. (2d) 477, 485. Such a statement does not meet the statutory requirements of section 9129, R. C. M. 1935, that the complaint must contain "A statement of the facts constituting the cause of action * * *" and is insufficient to withstand a general demurrer. See Bordeaux v. Greene, 22 Mont. 254, 56 Pac. 218, 74 Am. St. Rep. 600; Johnson v. Herring, 89 Mont. 156, 167, 295 Pac. 1100; Thompson v. Shanley, 93 Mont. 235, 246, 17 Pac. (2d) 1085; Linney v. Chicago, M. St. P. R. Co., 94 Mont. 229, 234, 21 Pac. (2d) 1101; Mining Securities Co. v. Wall, 99 Mont. 596, 602, 45 Pac. (2d) 302; Crenshaw v. Crenshaw, supra; 41 Am. Jur. "Pleading," sec. 16, p. 301; 41 Am. Jur. "Pleading," sec. 20, p. 303; Miles v. McDermott, 31 Cal. 270, 271, 272; Mensinger v. O'Hara, 189 Ill. App. 48, 50; State v. American Surety Co. 26 Idaho 652, 145 Pac. 1097, 1101, 1102, Ann. Cas. 1916E, 209.

The amended complaint alleged that during the month of

March 1941, plaintiff furnished a bond in. the sum of $1,000 and received a supply of license blanks. The pleading then states the conclusion of law that ''upon his appointment as State Fish and Game Warden it became the duty. and official duty of the defendant John Slover McFarland to furnish the plaintiff license blanks.'' The pleading fails to allege the conditions of plaintiff's bond or whether she had fully complied with the conditions thereof, nor does it aver any other facts from which the conclusion might be drawn that, as a matter of law, the defendant McFarland owed to plaintiff an absolute ministerial duty to furnish her the license blanks. Certainly the pleading does not contain sufficient averments to. disclose the facts so as to enable the defendant McFarland to prepare his defense or from which an unmistakable conclusion can be drawn that defendant McFarland owed plaintiff an absolute, specific and imperative duty to furnish her license blanks, or that plaintiff had a right to them.

The amended complaint alleges that plaintiff furnished another bond on or about March 25, 1942; that both bonds were accepted and approved by the state fish and game warden, then follows a statement of the same conclusion of law as to said defendant's alleged duty. No other facts are averred and there is nothing from which it can be said as a matter of law that defendant McFarland owed plaintiff a duty to furnish license blanks or that she was entitled to have them as a matter of right.

In First National Bank v. Filer, 107 Fla. 526, 145 So. 204, 207, 87 A. L. R. 267, it is said: ''Official action, the result of performing a certain specific duty arising from designated facts, is a ministerial act. Grider v. Tally, 77 Ala. 422, 54 Am. Rep. 65. Another way of expressing the same thought is that a duty is to be regarded as ministerial when it is a duty that has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated; the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion.. Mechem, Public Offices and Officers (1890), par. 658, p. 442..

And that a necessity may exist for the ascertainment, from personal knowledge or from information derived from other sources, of those facts or conditions, upon the existence or fulfillment of which, the performance of the act becomes a clear and specific duty, does not operate to convert the act into one judicial in its nature. Grider v. Tally, supra.''

In Vance v. Hale, 156 Tenn. 389, 2 S. W. (2d) 94, 96, 57 A. L. R. 1029, 1033, it is stated: ''We think it thus obvious from our cases that in order to hold a public officer liable, as for misfeasance in the omission of a duty placed upon him, it must appear that such officer knowingly or negligently failed to perform said duty * * *.''

Aside from the failure to show an absolute ministerial duty on the part of the defendant McFarland as state fish and game warden, to furnish license blanks, there are no facts from which it appears that he knowingly or negligently failed to perform such alleged duty.

It is the general rule that parties aggrieved by erroneous rulings or orders of persons exercising judicial or quasi judicial powers must seek to have such errors corrected by appeal or review rather than by private action against the person who makes the erroneous rulings or decisions. Jaffarian v. Murphy, 280 Mass. 402, 183 N. E. 110, 111, 85 A. L. R. 293, holds that the arbitrary refusal to issue plaintiff an amusement license does not render a mayor liable for tort where there was no malicious injury to plaintiff, the court saying: ''In cases where an official or board acting in a quasi judicial capacity within the scope of its authority errs, commonly the law affords an aggrieved party adequate relief by resort to one of the extraordinary writs.'' See also 85 A. L. R. 298, 43 Am. Jur., ''Public Officers,'' sec. 274, p. 86, note 20, and 42 Am. Jur., ''Public Administrative Laws,'' sec. 186 et seq., p. 549.

▪ The liability of the surety cannot exceed that of his principal. See: Gary Hay & Grain Co., Inc., v. Carlson, 79 Mont.. 111, 255 Pac. 722; United States v. Allsbury, 4 Wall, 186, 71 U. S. 186, 18 L. Ed. 321; Phelps v. Dawson, 8 Cir., 97 F. (2d)

339, 116 A. L. R. 1343, 1348; National Surety Co. of New York v. Ulmen, 9 Cir., 68 F. (2d) 330; 21 Cal. Jur. 929, sec. 106, n. 11; 52 L. R. A. 187, n. 4; 43 Am. Jur. "Public Officers," n. 13, sec. 415, p. 185; id., sec. 417; 50 Am. Jur., "Suretyship," sec. 30, p. 921.

As the amended complaint wholly fails to state facts sufficient to constitute a cause of action against the defendants, or either of them, the trial court properly sustained defendants' demurrers thereto and rendered and caused to be entered judgment for defendants, the judgment is affirmed.

Mr. Chief Justice Adair and Associate Justices Freebourn and Metcalf concur.

MR. JUSTICE ANGSTMAN (dissenting):

It is fundamental that if a complaint states facts sufficient to entitle plaintiff to any relief, it is good as against a general demurrer and whatever is necessarily implied in, or is necessarily to be inferred from an allegation must be taken as directly alleged. Marcellus v. Wright, 51 Mont. 559, 154 Pac. 714; Buhler v. Loftus, 53 Mont. 546, 165 Pac. 601; Grasswick v. Miller, 82 Mont. 364, 267 Pac. 299; State ex rel. Sadler v. Evans, 106 Mont. 286, 77 Pac. (2d) 394.

I concede that the State Fish and Game Warden has discretion in selecting agents to sell fish and game licenses under section 3684, R. C. M. 1935.

Here it is alleged that from 1935 continuously to the year 1941 plaintiff had been selected as one of such agents. She furnished a bond in March 1941 and received from the then Fish and Game Warden a supply of blanks which she sold in the usual course of business. It is alleged that upon the appointment of defendant as State Fish and Game Warden it became his duty to furnish to plaintiff license blanks so that she could continue to sell the same for which she had furnished the bond. The complaint alleged "that from the 9th day of June 1941, the defendant, John Slover McFarland, as Fish and Game Warden of the State of Montana, wrongfully failed to perform his official

duty to supply the plaintiff with license blanks for hunting and fishing licenses." This is not the allegation of a conclusion of law but is the averment of an ultimate fact following from the previous allegation that plaintiff had been selected as a selling agent for the year 1941. Plaintiff alleged that in March 1942 she again furnished a bond which was accepted and approved and that it again became the duty of defendant, McFarland, to furnish blanks which was not done.

The law does not specify the period of time that the agents may serve under an appointment but since bonds are furnished annually, it seems that the practice has been to appoint them each year either by a direct appointment or by implication.

I think when defendant's predecessor in the office of State Fish and Game Warden appointed plaintiff and furnished her with blanks in 1941 the discretion vested in the Fish and Game Warden had been exercised for that year so far as plaintiff's appointment was concerned. That by reason thereof defendant, as the successor in the office of Fish and Game Warden, owed the duty of supplying blanks to her for the balance of that year, unless there was good reason for not doing so, which would be a matter of defense and not a matter to be negatived in the complaint. Compare McCarthy v. Employers' Fire Ins. Co., 97 Mont. 540, 37 Pac. (2d) 579, 97 A. L. R. 292. No useful purpose would be subserved in discussing the question whether the acceptance and approval of the bond furnished by plaintiff for the year 1942 was tantamount to her appointment as agent for 1942. She was entitled to recover damages for failure to furnish blanks for the balance of the year 1941 in any event. The complaint in my opinion stated facts sufficient to entitle plaintiff to some damages and hence the court erred in sustaining the general demurrer to the complaint.