S. W. SCOTT AND ELIZABETH SCOTT, HUSBAND AND WIFE, PLAINTIFFS AND RESPONDENTS, v. H. J. KYHL AND DOROTHY A. KYHL, HUSBAND AND WIFE, DEFENDANTS AND APPELLANTS.

No. 10487

Submitted January 10, 1963. Decided March 18, 1963.

379 P.2d 803.

Wiggenhorn, Hutton, Schiltz & Sheehy, Billings, John C. Sheehy, Billings, (argued orally) for appellants.

Sandall, Moses, Cavan & Battin, Billings, John Cavan, Jr., Billings, (argued orally), for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment quieting title to certain property and denying an alleged lien of a mortgage against that property.

The pertinent facts are these. This cause was tried in the Thirteenth Judicial District, County of Yellowstone, by the Honorable E. E. Fenton as District Judge. It was heard under the rules which existed prior to January 1, 1962. The trial was had on February 20, 1962, and resulted in a judgment for the plaintiffs and respondents, S. W. Scott and his wife Elizabeth Scott. The appeal followed.

Prior to the month of September of 1950 appellants were the owners of real property located in Rosebud County on which there was a tavern known as the Colstrip Tavern. The liquor licenses for the Tavern were held in the name of the appellant Dorothy Kyhl only.

Respondent Elizabeth Scott, by a former marriage, had a son and daughter-in-law, Leonard E. and Eva Rothwell. On September 2, 1950, the appellants Kyhl and the Rothwells entered into a written memorandum for the sale of the Colstrip Tavern for the sum of $16,500 with monthly payments of $250 beginning April 1, 1951. Thereafter, on October 18, 1950, a formal contract for deed consisting of eight pages was signed by the appellants and by Leonard E. and Eva Rothwell, which changed the date of the payment of $250 to September 1, 1951, or eleven months after the execution of the agreement, with

interest of five percnt on the unpaid balance. On page 3, of this contract for deed, there appears the following language:

"Contemporaneously with the execution of this contract a mortgage on the following described property, to-wit:

"Lot six (6) Block Ten (10) Grand View Sub-division of the City of Billings, Yellowstone County, Montana, according to the official plat thereof now on file and of record in the office of the County Clerk and Recorder of Yellowstone County, Montana, is to be executed by S. W. Scott and Elizabeth Scott, husband and wife, of Moccasin, Montana, in the sum of Seven Thousand Dollars ($7,000); said mortgage is given as security for the purchase price, and for the use and benefit of Vendees, and for the *carrying out of the covenants and conditions of this contract,* and is subject to record encumbrances." Emphasis supplied.

On the eighth and final page of this contract for deed is the signature of the respondents and the language used is as follows:

"In consideration of the sale by the Vendors to the Vendees, upon the terms and conditions set forth in the above contract, and for a valuable consideration, the receipt whereof is hereby acknowledged, the undersigned agrees to guarantee the payment of Seven Thousand Dollars ($7,000), on the purchase price of the property described in said contract, and to secure the payment of said Seven Thousand Dollars ($7,000), to execute a mortgage in the sum of Seven Thousand Dollars ($7,000) ON THE PROPERTY DESCRIBED IN SAID CONTRACT, provided that if the payments due under said contract by the Vendees be made as herein, then and in that event said mortgage to be fully cancelled and determined and otherwise to be in full force and effect."

On June 15, 1951, the respondents S. W. and Elizabeth Scott, executed a mortgage with the appellants H. J. and Dorothy A. Kyhl as the mortgagees, on the property hereinbefore described in the sum of $7,000, which instrument further

discloses that there was a first mortgage dated May 24, 1951, for $9,500 in favor of the Western Life Insurance Company of Helena, Montana.

The Mortgage, dated June 15, 1951, was made in conformity with the Contract for Deed above referred to, which was made on October 18, 1950.

The Rothwells took possession of the Colstrip Tavern in September 1950 and operated the same until September, 1952. During this nearly two years of occupancy, the Rothwells paid nothing to the appellants. Rothwells then informed appellants that they were abandoning the premises and handed the appellants the keys. It further appears that Mr. Kyhl in company with a Mr. Morton came to the apartment of Mr. Rothwell early in 1953 for the purpose of allowing Mr. Morton to operate the Colstrip Tavern, and who went into possession and operated the Tavern for a period of six weeks.

In the month of May 1953, Mr. Kyhl came to Mr. Rothwell and suggested that they make a trip to Forsyth to purchase the liquor licenses so they would not expire.

On August 19, 1953, there was served on Leonard E. and Eva Rothwell, a notice of cancellation of the contract for deed dated October 18, 1950, and a demand was made for the sum of $16,500 as principal, with interest at five percent from September 13, 1950, and $168.98 due for state, county and school district taxes paid by the Kyhls, making a total of $16,668.98. This notice further provided that a demand for payment of the full amount due under the terms of the contract, together with the delinquent interest thereon, and upon failure to make such payment immediately an action would be instituted to enforce the rights of the undersigned, Dorothy Kyhl.

On October 26, 1960, the respondents filed an action to quiet title to the Billings property naming the appellants as parties. The defendants denied generally the allegations of the complaint and cross-complaint. In the cross-complaint it was

asserted that the Billings property was subject to the lien of the second mortgage given by the respondents.

In the reply to the cross-complaint, respondents set up several affirmative defenses.

On April 12, 1962, the trial court made four conclusions of law, which are as follows:

"I. That by said notice, Exhibit D, said contract for deed was cancelled and rescinded, and thereby the original obligation of the vendees, Leonard E. Rothwell and Eva Rothwell, was altered, and the remedies and rights of the defendants against said vendees was impaired, and that the plaintiffs herein were thereby exonerated from payment upon the written contract of guaranty hereinbefore mentioned.

"II. That the contract of guaranty and the mortgage securing the same were collateral to the above-mentioned contract for deed, and did not constitute a separate and independent promise of payment by the plaintiffs.

"III. That the mortgage and contract of guaranty hereinbefore mentioned are not barred by the provisions of Section 93-2603, Revised Codes of Montana of 1947.

"IV. That the lien of said mortgage is now without any right or validity whatsoever, and that the plaintiffs are entitled to a decree quieting title to the premises described in the complaint."

This appeal followed, and the appellants set out twelve specifications of error.

The specifications of error resolve themselves into whether or not the fact that Rothwells were discharged from any obligation under the contract to the appellants likewise operates to discharge and exonerate the respondents from any obligation by virtue of the contract and the mortgage.

Addressing ourselves to the statutory law, section 30-208, R.C.M.1947, reads:

"A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor,

without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in anywise impaired or suspended.''

Section 30-407, R.C.M.1947, is the statute applying to sureties and reads:

"A surety is exonerated:

''1. In like manner with a guarantor: * * *.''

Under the facts here present, disclosing that the Rothwells abandoned the premises, turned back to appellants the keys; thereafter appellants repossessing the premises by permitting its operation by another party and later serving a notice of cancellation upon the Rothwells, by such acts and conduct appellants elected their remedy of rescission of the contract for deed and deprived themselves of a right of action for the recovery of the unpaid purchase money from the respondents.

In Vinson v. Pelletier, 78 Mont. 254, 255 P. 1067, the following statement appears:

''If he [creditor] does any act which tends to increase the liabilities of the surety without his assent, or if he makes any arrangement with the principal debtor, without the surety's consent, by which the risk of the surety is materially increased, or by which the surety is induced to part with an indemnity given him by the principal, or if he fails to act when duty requires him to do so, and the omission proves injurious to the surety, it is a settled rule that in all such cases the surety will be discharged, and he may set up such conduct as a defense to any suit brought against him, if not at law, at least in equity.''

In United States Building & Loan Ass'n v. Burns, 90 Mont. 402, 422, 4 P.2d 703, the court held:

''It is clear, then, that without the surety's consent, the original obligation of the principal was altered, and the remedies and rights of the creditor against Mains, the principal,

in respect thereto were suspended. This discharged the surety. Vinson v. Pelletier, 78 Mont. 254, 255 P. 1067."

In Meinecke v. McFarland, 122 Mont. 515, 206 P.2d 1012, it is said:

"The liability of the surety cannot exceed that of his principal."

In 50 Am.Jur., Suretyship, p. 924, § 32, we find a distinction between compensated sureties and surety companies and that of a private or gratuitous surety. There it is stated:

"The latter is a favorite of the law, and the contract is construed strictly in his favor. 'Strictissimi juris' is the term used to express the rule by which his liability is to be determined. The reason for this is that surety is not the recipient of the full consideration which has accrued or may accrue to the principal debtor, and further, his situation is comparatively a dependent one, since he does not enjoy the opportunity of protecting himself that belongs to the other parties to the contract."

In Beck v. Shepherd Fruit Co., 19 Cal.App.2d 590, 598, 66 P.2d 188, the court used the following language:

"Since, as heretofore indicated, it is our view that the letter of November 28, 1930, signed by the defendant E. R. Lewis, which formed the basis of the present action, was not an independent contract entirely disassociated from the contract of sale, but amounted to a guaranty that the Seeleys would perform their covenants under the contract of sale, it follows that plaintiffs, having elected to retain the money paid on the purchase price and to repossess the property which was the subject of the sale contract, may not now recover from the guarantors of the purchasers."

As against our previous discussion of the law applicable to these facts, the appellants assert that the contract of the repondent constitutes an original independent promise, as distinguished from a collateral promise; and, that therefore

530

even though the contract became unenforceable as against Rothwells, the liability of respondents remained the same.

The appellants recognize the rule that the liability of the principal debtor measures the guarantor's liability, but urge that an exception to that rule arises when the contract itself reveals an independent agreement so as to ascertain an *intention of the parties* to be separately bound. As put by the appellants, "* * * if an instrument, purporting by its terms to be a 'guaranty' was in reality, from its terms, an original, primary obligation on the part of the promissors, and such was the intention of the parties, then that obligation would be enforced even though the principal debtor may have been discharged." For this principle appellants cite Castle & Co. v. Public Service Underwriters, 198 Wash. 576, 89 P.2d 506; Robey v. Walton Lumber Co., 17 Wash.2d 242, 135 P.2d 95, 145 A.L.R. 924; Meyer v. Moore. 72 Cal.App. 367, 237 P. 550; Sinclair Refining Co. v. S. J. Pitts Hauling Co., 21 Misc.2d 959, 198 N.Y.S.2d 606.

There may be exceptions to the rule as set out by appellants expressed in these authorities, but we think the district court's findings as to the intentions of the parties and the contracts themselves do not call for any exception to the general rule. As previously quoted, the contract specifically recites:

"Contemporaneously with the execution of this contract a mortgage on the following described property, to-wit: * * * is to be executed * * *; said mortgage is given as security for the purchase price, and for the use and benefit of Vendees, and for the *carrying out of the covenants and conditions of this contract* and * * *." Emphasis supplied.

Also, this language previously quoted: "* * * provided that if the payments due under said contract by the Vendees be made as herein, then and in that event said mortgage to be fully cancelled and determined and otherwise to be in full force and effect."

It being manifest that the court correctly applied law to the facts, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, JOHN C. HARRISON and CASTLES concur.